## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

| | |
|---|---|
| **ADRIAN DAIL, BRITTANY TURNER, KATHY TURNER, FERMIN MARTINEZ, BARBARA ZEUCH, DANIELLE DAIL, MELISSA POWERS, ASHLEY PARRISH, PATRICIA NEVILLE POPE, BRITTNEY MICHIE, KELLIE PIERCE, SHARON PENDLETON, ESTEBAN FELICIANO and SABRINA MILLER**<br>**Individually and on behalf of all others similarly situated,** | |
| *Plaintiffs*, | |
| **v.** | **Civil Action No.   <u>2:23-cv-276</u>** |
| | **JURY TRIAL DEMANDED** |
| **BOTH, INC.,**<br>**G.C. OF NEWPORT NEWS, L.L.C.,**<br>**G.C. OF WILLIAMSBURG, L.L.C.,**<br>**G.C. OF CHESAPEAKE SQUARE, L.L.C.,**<br>**G.C. OF CHESAPEAKE, INC.,**<br>**G.C. OF FREDERICKSBURG PARTNERS, L.L.C.,**<br>**G.C. OF FREDERICKSBURG, L.L.C.,**<br>**G.C. OF MANASSAS, L.L.C.,**<br>**G.C. OF VIRGINIA BEACH, L.L.C.,**<br>**BOTH DEVELOPMENT OF MARYLAND, INC.,**<br>**G.C. OF FULLERTON, L.L.C.,**<br>**G.C. OF FULLERTON PARTNERS, L.L.C.,**<br>**G.C. OF CAPITAL CENTRE, L.L.C.,**<br>**G.C. OF WALDORF, L.L.C., AND**<br>**G.C. OF WALDORF PARTNERS, L.L.C.** | **COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**<br><br>**CLASS ACTION PURSUANT TO FED. R. CIV. P. 23** |
| *Defendants.* | |

## COMPLAINT

Plaintiffs, Adrian Dail ("A. Dail"), Brittany Turner ("Br. Turner"), Kathy Turner ("K. Turner"), Fermin Martinez ("Martinez"), Barbara Zeuch ("Zeuch"), Danielle Dail ("D. Dail"), Melissa Powers ("Powers"), Ashley Parrish ("Parrish"), Patricia Neville Pope ("Pope"), Brittney Michie ("Michie"), Kellie Pierce ("Pierce"), Sharon Pendleton ("Pendleton"), Esteban Feliciano ("Feliciano") and Sabrina Miller ("Miller") (hereinafter "Plaintiffs" or "Named Plaintiffs") bring this action individually and on behalf of all current and former hourly employees who worked for Defendants (hereinafter "Defendants"), at any time during the relevant statutes of limitation through the final disposition of this matter, to recover compensation, double and/or triple damages, and attorneys' fees and costs pursuant to the provisions of Sections 206, 207 and 216(b) of the Fair Labor Standards Act of 1938, as amended 29 U.S.C. § 216(b), Va. Code §§ 40.1-29 (the Virginia Wage Payment Act, or VWPA), 40.1-29.2 (the Virginia Overtime Wage Act, or VOWA), and 40.1-28.8 *et seq*. (the Virginia Minimum Wage Act, or VMWA).

Plaintiffs' FLSA claims are asserted as a collective action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), while the respective state law claims are asserted as class actions under Federal Rule of Civil Procedure 23.

Plaintiffs and Putative Class Members seek additional class relief for Defendants' filing of inaccurate wage information in violation of 26 U.S.C. § 7374.

The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## I.    OVERVIEW

1.      This is a "hybrid" collective/class action to recover unpaid overtime wages, unpaid regular wages, unpaid minimum wages, liquidated damages, and other applicable

damages brought pursuant to federal and state wage laws.  Specifically, Defendants have instituted unlawful wage payment policies and practices requiring Plaintiffs and putative collective and/or class members herein - to:

  a. 'Clock out' while continuing to work "off-the-clock" and without compensation for such hours;

  b. work overtime hours without overtime compensation at one and one-half times the regular hourly rate; and/or

  c. work hours without the payment of the applicable minimum wage; and/or

  d. Requiring that employee "servers" who receive tips to claim additional tips (which the employee did not receive), for the employer to "qualify" for the tip credit permitted by 29 U.S.C. § 203(m)(2)(A), without having received such tips;

  e. Requiring workers to perform excessive non-tipped work while being paid a "tip credit" rate of less than minimum wage, e.g., $2.13 an hour;

  f. Some if not all, of the above policies and/or practice resulted in the Defendants filing of inaccurate reports of wages earned, in violation of 26 U.S.C. § 7374.

2. A collective action is brought pursuant to the Fair Labor Standards Act ("FLSA"), under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), and class actions under FED. R. CIV. PROC. 23 are brought pursuant to the Virginia Wage Payment Act ("VWPA"), Code of Va. § 40.1-29, Virginia Overtime Wage Act ("VOWA"), Code of Va. § 40.1-29.2,Virginia Minimum Wage Act ("VMWA") 40.1-28.8 *et seq*., and filing of inaccurate wage information in violation of 26 U.S.C. § 7374.

3. Plaintiffs and the Putative Class/Collective Members are those similarly situated

persons who have worked for Defendants, under common management and doing business as Golden Corral Restaurants in Virginia, Maryland, and South Carolina as hourly employees at any time during the three years preceding the filing of this Complaint and have not been paid for all hours worked nor been paid the correct amount of overtime and/or minimum wages in violation of state and federal law.

4.      Count One (1) is a collective action to recover unpaid minimum wages, liquidated damages and other applicable damages brought pursuant to 29 U.S.C. §§ 201, *et seq*. All Named Plaintiffs are representatives of the FLSA Minimum Wage Collective. ("FLSA Minimum Wage Collective Representatives").

5.      Count Two (2) is a collective action to recover unpaid overtime wages, liquidated damages and other applicable damages brought pursuant to 29 U.S.C. §§ 201, *et seq*. All Full-time Plaintiffs Adrian Dail, Melissa Powers, Brittany Turner, Kathy Turner, Kellie Pierce, Ashley Parrish, Fermin Martinez, and Esteban Feliciano are representatives of the FLSA Overtime Wage Collective ("FLSA Overtime Collective Representatives").

6.      Count Three (3) is a Rule 23 class action to recover damages and/or statutory penalties to recover unpaid wages in Virginia-based locations, where employees were not paid in the work weeks work was performed.  All Named Plaintiffs are representatives of the Virginia Unpaid Wage Class.

7.      Count Four (4) is a Rule 23 class action to recover damages and/or statutory penalties to recover unpaid wages which were not paid as overtime wage payments in Virginia-based locations. All Full-time Plaintiffs Adrian Dail, Brittany Turner, Kathy Turner, Fermin Martinez, Ashley Parrish, Kellie Pierce, Melissa Powers, and Esteban Feliciano are representatives of the Virginia Overtime Class ("Virginia Overtime Class Representatives").

8.      Count Five (5) is a Rule 23 class action to recover damages and/or statutory penalties to recover unpaid wages which were not paid as unpaid minimum wage payments in Virginia-based locations. All Named Plaintiffs are representatives of the Virginia Minimum Wage Class ("Virginia Minimum Wage Class Representatives").

9.      Count Six (6) is a Rule 23 class action to recover damages and/or statutory penalties pursuant to 29 U.S.C. § 7434, and other related statutory relief. All Named Plaintiffs are representatives of the Inaccurate Wages IRS Class ("Inaccurate Wage IRS Class Representatives").

## II.      THE PARTIES

10.     Plaintiffs are hourly employees of Defendants, all of which are owned and operated by the same Golden Corral franchiser, Houston Odom[1], from a single Virginia Beach address. The primary duties of Plaintiffs and those similarly situated include work as hourly servers, some of whom also performed functions as "crew leaders," "floor supervisors," and/or "cashiers". All Plaintiffs were subject to the same payroll practices complained of herein which resulted in the failure to pay all hours worked, including regular pay, overtime and/or minimum wage and the associated inaccurate reporting of tips not received by each server.

11.     Plaintiffs Adrian Dail, Melissa Powers, Brittany Turner, Kathy Turner, Kellie Pierce, Ashley Parrish, Fermin Martinez, and Esteban Feliciano worked full-time (hereinafter "Full-time Plaintiffs").

12.     Plaintiffs' Consents to join Opt-in claims are filed herein as Exhibit 1.

13.     Plaintiff Adrian Dail is a Virginia resident and has been employed by Defendants

---

[1]While the Virginia State Corporation Commission (SCC) filings list Houston Odum and Houston Odum Jr., on information and belief they are referring to the same person.

at its Williamsburg, Virginia Golden Corral Store # 800 as an hourly "server/floor supervisor" from March of 2007 through April 22, 2023.  Plaintiff Adrian Dail was an hourly employee but did not receive compensation for all hours worked, including overtime compensation for all hours worked more than forty (40) hours per work week. She was also instructed to claim tips that she did not receive but for which she paid taxes.  Additionally, she was improperly paid only a tip credit rate despite performing considerable non-tipped work.

14.    Plaintiff Brittany Turner is a Virginia resident and has been employed by Defendants as an hourly "server/floor supervisor" at its Newport News, Virginia Golden Corral Store # 844, on and off for 15 years from 2008, most recently from 2018 to date.  Plaintiff Brittany Turner is an hourly employee but did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked, including overtime compensation for all hours worked more than forty (40) hours per work week. She was also instructed to claim tips that she did not receive but for which she paid taxes. Additionally, she was improperly paid only a tip credit rate despite performing considerable non-tipped work.

15.    Plaintiff Kathy Turner is a Virginia resident and has been employed by Defendants as an hourly "server/floor supervisor" at its Newport News, Virginia Golden Corral Store #844, for 7 years from 2016 to date.   Plaintiff Kathy Turner is an hourly employee but did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked, including overtime compensation for all hours worked more than (40) hours per work week. She was also instructed to claim tips that she did not receive but for which she paid taxes. Additionally, she was improperly paid only a tip credit rate despite performing considerable non-tipped work.

16.    Plaintiff Fermin Martinez is a Virginia resident and has been employed by

Defendants as an hourly "server/crew leader" at its Williamsburg, Virginia Golden Corral Store # 800, for sixteen (16) years. Plaintiff Martinez is an hourly employee but did not receive compensation for all hours worked or the correct amount of overtime/minimum wage compensation for all hours worked more than forty (40) hours per work week. He was also instructed to claim tips that he did not receive but for which he paid taxes. Additionally, he was improperly paid only a tip credit rate despite performing considerable non-tipped work.

17.     Plaintiff Barbara Zeuch is a Virginia resident and has been employed by Defendants as an hourly "server/crew leader" at its Williamsburg, Virginia Golden Corral Store # 800 for the last fifteen (15) years until she was recently terminated. She did not receive compensation for all the hours worked, she did not receive minimum wage for all hours worked and she was also instructed to claim tips that she did not receive but for which she paid taxes. Additionally, she was improperly paid only a tip credit rate despite performing considerable non-tipped work.

18.     Plaintiff Patricia Neville Pope is a Virginia resident and has been employed by Defendants as hourly employee and "server" for the last year at the Newport News, Virginia Golden Corral Store #844 but did not receive compensation for all hours worked, she did not receive minimum wage for all hours worked, and she was instructed to claim tips that she did not receive but for which she paid taxes. Additionally, she was improperly paid only a tip credit rate despite performing considerable non-tipped work.

19.     Plaintiff Danielle Dail is a Virginia resident and has been employed by Defendants as an hourly "server" at its Williamsburg, Virginia Golden Corral Store # 800 from 2014 to June 2023. She did not receive compensation for all hours worked, she did not receive minimum wage for all hours worked, and she was instructed to claim tips that she did not receive

but for which she paid taxes. Additionally, she was improperly paid only a tip credit rate despite performing considerable non-tipped work.

20.     Plaintiff Melissa Powers is a Virginia resident and has been employed by Defendants since approximately 2016 and as an hourly "server/crew leader/cashier" at its Newport News, Virginia Golden Corral Store # 844 for approximately the last seven (7) years. Plaintiff Powers is a full-time hourly employee but did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked more than forty (40) hours per work week. She was also instructed to claim tips that she did not receive but for which she paid taxes. Additionally, she was improperly paid only a tip credit rate despite performing considerable non-tipped work.

21.     Plaintiff Ashley Parrish is a Virginia resident and has been employed by Defendants as an hourly "server/cashier" at its Newport News, Virginia Golden Corral Store # 844 and she has been employed intermittently since 2015. Most recently she was employed from April 2022 to February 2023. She did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked more than forty (40) hours per work week. She was also instructed to claim tips that she did not receive but for which she paid taxes. Additionally, she was improperly paid only a tip credit rate despite performing considerable non-tipped work.

22.     Plaintiff Brittney Michie is a Virginia resident and has been employed by Defendants as an hourly "server" at its Williamsburg, Virginia Golden Corral Store # 800, from November 2022 to April 2023. Plaintiff Michie is an hourly employee but did not receive compensation for all hours worked, she did not receive minimum wage for all hours worked, and she was instructed to claim tips that she did not receive but for which she paid taxes.

Additionally, she was improperly paid only a tip credit rate despite performing considerable non-tipped work.

23.    Plaintiff Kellie Pierce is a Virginia resident and has been employed by Defendants as an hourly "server" at its Newport News, Virginia Golden Corral Store # 844 for the last eight to nine years.  Plaintiff Pierce is an hourly employee but did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked more than forty (40) hours per work week. She additionally did not receive minimum wage for all hours worked, and she was instructed to claim tips that she did not receive but for which she paid taxes. Additionally, she was improperly paid only a tip credit rate despite performing considerable non-tipped work.

24.    Plaintiff Sharon Pendleton is a Virginia resident and has been employed by Defendants as an hourly "server" for over seventeen (17) years. She previously worked at the Hampton Roads location until it shut down, and presently works at its Newport News, Virginia Golden Corral Store # 844. Plaintiff Pendleton is an hourly employee but did not receive compensation for all hours worked, she did not receive minimum wage for all hours worked, and she was instructed to claim tips that she did not receive but for which she paid taxes. Additionally, she was improperly paid only a tip credit rate despite performing considerable non-tipped work.

25.    Plaintiff Esteban Feliciano is a Virginia resident and has been employed by Defendants as an hourly "server" at its Williamsburg, Virginia Golden Corral Store # 800, for approximately the last two years.  Plaintiff Feliciano is an hourly employee but did not receive compensation for all hours worked or the correct amount of overtime/minimum wage compensation for all hours worked more than forty (40) hours per work week. He was instructed

to claim tips that he did not receive but for which he paid taxes. Additionally, he was improperly paid only a tip credit rate despite performing considerable non-tipped work.

26.    Plaintiff Sabrina Miller is a Virginia resident and has been employed by Defendants as an hourly "server" at its Williamsburg, Virginia Golden Corral Store # 800 and Newport News, Virginia Golden Corral Store #844 for 2 ½ years.  Plaintiff Miller is an hourly employee but did not receive compensation for all hours worked, she did not receive minimum wage for all hours worked and she was instructed to claim tips that she did not receive but for which she paid taxes.  Additionally, she was improperly paid only a tip credit rate despite performing considerable non-tipped work.

27.    BOTH Inc. is a stock corporation registered in Virginia. The registered agent and President is Houston Odom, Jr. and the registered office address and principal office address is 1453 Kempsville Rd., Suite 102[2], Virginia Beach, VA, 23464. This entity owns and/or manages Golden Corral locations in Dover, DE and Ruther Glen, VA.

28.    G.C. of Williamsburg, L.L.C. is a limited liability company registered in Virginia. The registered agent and Member/Manager is Houston Odom, and the registered office address and principal office address is 1453 Kempsville Rd., Suite 107, Virginia Beach, VA, 23464. This entity owns and/or manages a Golden Corral franchise located at 218 Bypass Rd, Williamsburg, VA 23185

29.    G.C. of Newport News, L.L.C. is a limited liability company registered in Virginia. The registered agent and Member/Manager is Houston Odom, and the registered office address and principal office address is 1453 Kempsville Rd., Suite 107, Virginia Beach, VA,

---

[2] The SCC lists the Suite number as 102, however on information and belief, Plaintiffs believe BOTH Inc. is located in Suite 107.

23464. This entity owns and/or manages a Golden Corral franchise located at 305 Chatham Dr, Newport News, VA 23602.

30.     G.C. of Chesapeake Square, L.L.C. is a limited liability company registered in Virginia. The registered agent and Member/Manager is Houston Odom, and the registered office address and principal office address is 1453 Kempsville Rd., Suite 107, Virginia Beach, VA, 23464. This entity owns and/or manages a Golden Corral franchise located at 101 Volvo Pkwy, Chesapeake, VA 23320.

31.     G.C. of Chesapeake, Inc. is a limited liability company registered in Virginia. The registered agent and President is Houston Odom, Jr. and the registered office address and principal office address is 1453 Kempsville Rd., Suite 107, Virginia Beach, VA, 23464. This entity owns and/or manages a Golden Corral franchise located at 101 Volvo Pkwy, Chesapeake, VA 23320

32.     G.C. of Fredericksburg Partners, L.L.C. is a limited liability company registered in Virginia. The registered agent and Member/Manager is Houston Odom, Jr. and the registered office address and principal office address is 1453 Kempsville Rd., Suite 107, Virginia Beach, VA, 23464. This entity owns and/or manages a Golden Corral franchise located at 10320 Spotsylvania Ave, Fredericksburg, VA 22408.

33.     G.C. of Fredericksburg, L.L.C. is a limited liability company registered in Virginia. The registered agent and Member/Manager is Houston Odom, Jr. and the registered office address and principal office address is 1453 Kempsville Rd., Suite 107, Virginia Beach, VA, 23464. This entity owns and/or manages a Golden Corral franchise located at 10320 Spotsylvania Ave, Fredericksburg, VA 22408.

34.     G.C. of Manassas, L.L.C. is a limited liability company registered in Virginia.

The registered agent and Member/Manager is Houston Odom, Jr. and the registered office address and principal office address is 1453 Kempsville Rd., Suite 107, Virginia Beach, VA, 23464. This entity owns and/or manages a Golden Corral franchise located at 10801 Bulloch Dr, Manassas, VA 20109.

35.     G.C. of Virginia Beach, L.L.C. is a limited liability company registered in Virginia. The registered agent and Member/Manager is Houston Odom, and the registered office address and principal office address is 1453 Kempsville Rd., Suite 107, Virginia Beach, VA, 23464. This entity owns and/or manages Golden Corral franchise located at 400 S Independence Blvd, Virginia Beach, VA 23452.

36.     BOTH Development of Maryland, Inc. is a stock corporation registered in Virginia. The registered agent, President, and Director of the Corporation is Houston Odom, Jr. and the registered office address and principal office address is 1453 Kempsville Rd., Suite 107, Virginia Beach, VA, 23464. This entity owns and/or manages Golden Corral franchises located at 4968 Centre Pointe Dr, Charleston, SC 29418, 7047 Arundel Mills Blvd, Hanover, MD 21076 and 17635 Valley Mall Rd, Hagerstown, MD 21740.

37.     G.C. of Fullerton, L.L.C. is a limited liability corporation registered in Virginia with a registered office address and the principal office address is 1453 Kempsville Rd., Suite 107, Virginia Beach, VA, 23464. Houston Odom, Jr. is the registered agent and Member/Manager. This entity owns and/or manages a Golden Corral franchise located at 7908 Rossville Blvd, Baltimore, MD 21236.

38.     G.C. of Fullerton Partners, L.L.C. is a limited liability corporation registered in Virginia with a registered office address and the principal office address is 1453 Kempsville Rd., Suite 107, Virginia Beach, VA, 23464. Houston Odom, Jr. is the registered agent and

Officer/Director. This entity owns and/or manages a Golden Corral franchise located at 7908 Rossville Blvd, Baltimore, MD 21236.

39.    G.C. of Capital Centre, L.L.C. is a limited liability corporation registered in Virginia with a registered office address and the principal office address is 1453 Kempsville Rd., Suite 107, Virginia Beach, VA, 23464. Houston Odom, Jr. is the registered agent and Member/Manager. This entity owns and/or manages a Golden Corral franchise located at 1001 Shoppers Way, Largo, MD 20774.

40.    G.C. of Waldorf, L.L.C. is a limited liability corporation registered in Virginia with a registered office and the principal office address is 1453 Kempsville Rd., Suite 107, Virginia Beach, VA, 23464. Houston Odom, Jr. is the registered agent and Officer/Director. This entity owns and/or manages a Golden Corral franchise located at 2800 Crain Hwy, Waldorf, MD 20601.

41.    G.C. of Waldorf Partners, L.L.C. is a limited liability corporation registered in Virginia with a registered office and the principal office address is 1453 Kempsville Rd., Suite 107, Virginia Beach, VA, 23464. Houston Odom, Jr. is the registered agent and Officer/Director. This entity owns and/or manages a Golden Corral franchise located at 2800 Crain Hwy, Waldorf, MD 20601.

42.    On information and belief, Defendant BOTH Inc. is a joint employer of all employees under common management practices and unified control operated from its Virginia Beach, Virginia home offices, by a small group of employees who oversee management, training and payroll for each of the separately named restaurant LLC Defendants.

43.    According to filings with the Virginia State Corporation Commission (SCC), each of the Defendants' Golden Corral Restaurants lists their principal office as BOTH Inc.'s

headquarters at 1453 Kempsville Rd., Suite 102, Virginia Beach, VA 23264-000.  Plaintiffs are currently unable to determine the precise corporate structure and relationship between Defendants. However, Defendants are an "employer" as defined by the FLSA and Va. Code § 40.1-2.

44.     On information and belief, each of the individual LLC and corporation Defendants share a unity of ownership, management and administration through BOTH, Inc.

### III.    JURISDICTION & VENUE

45.     This Court has federal question jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201–219.

46.     This Court has supplemental jurisdiction over the additional state law claims pursuant to 28 U.S.C. § 1367.

47.     This Court has personal jurisdiction over Defendants' conduct within this District and Division.

48.     Venue is proper in the Eastern District of Virginia because this is a judicial district where a substantial part of the events or omissions giving rise to the claims occurred.

49.     Specifically, Defendants maintain a significant working presence within this District and Division and Plaintiffs, and those similarly situated, worked for Defendants who are located and do business within this District and Division.

50.     Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391(b).

### IV.    FACTUAL ALLEGATIONS

51.     Plaintiffs and the Putative Class Members are non-exempt restaurant employees that were (and continue to be) paid by the hour.

52.     Plaintiffs and the Putative Class Members' primary duty is to perform server

duties at Golden Corral restaurants, for which they were paid an hourly wage (typically less than minimum wage) and received tips. Despite being paid on tipped basis, Plaintiffs and the Putative Class Members were also directed to perform other duties, including food preparation, maintenance of the restaurant and related customer interactions.

53.     All Plaintiffs were directed to work "off-the-clock" for significant portions of their work weeks.

54.     Representative Plaintiffs and the Putative Class Members who worked "full time" schedules typically worked (and have continued to work) over forty (40) hours per week during the applicable limitations periods but were not compensated for all hours worked - including work Defendants directed to be performed "off-the-clock."

55.     Representative Plaintiffs and Putative Class Members who worked "part time" schedules were also directed to work "off-the-clock" hours during the applicable statute of limitations periods and were not compensated for all hours worked – including work Defendants directed to be performed "off-the-clock."

56.     Plaintiffs' uncompensated "off the clock" work ranged from 5 to 20 or more hours per week for such weeks that Golden Corral restaurants were open for business during the applicable statute of limitations periods. These uncompensated hours resulted in uncompensated regular/minimum wage compensation and/or uncompensated overtime compensation.[3]

**Uncompensated Off-the-Clock Work as "Running Breaks"**

57.     On information and belief, Golden Corral restaurant store managers ("General Managers") were paid on a salary basis with additional monetary bonus incentives if "labor" targets, including minimizing or eliminating overtime payments, were met. To meet these goals,

---

[3] Several of Defendants' restaurants were closed in 2020 during COVID-based closures.

Defendants' salaried store managers regularly required Plaintiffs and the Putative Class/ Collective Members to "clock out" but to also continue to work, or "clock out" and wait at the store until it got busier. As such, Plaintiffs were not paid all wages for all time spent working or "engaged to wait" on premises as required by Defendants.

58.    Such "off the clock" work was so frequently required that the practice had a name – a "running break" – to which the practice was regularly referenced.  As such, Plaintiffs and Putative Class/Collective Members were regularly denied (1) regular pay for such hours and/or (2) the inclusion of such hours worked toward Defendants minimum wage and overtime compensation obligations to Plaintiffs and Putative Class/Collective Members.

59.    The practice required employees to clock out when instructed, typically when their hours approached hours over the assigned shift, or cumulatively, forty (40) hours per work week, and which would require the payment of overtime wages. (By extension, the payment of overtime compensation would cause the salaried restaurant general manager to lose that week's "labor-based" incentive bonus.)

60.    Also, when the restaurant was slow, or the arrival of a scheduled bus was delayed, Defendants instructed employees to clock out and wait on premises for the store to get busy or for the bus to arrive. Employees were not permitted to leave the premises while waiting.

61.    Defendants, or those under their instruction and control, also regularly clocked Plaintiffs and Putative Class Members "out" while they were required to continue working and/or adjusted claimed tips, often without the knowledge or consent of Plaintiffs and Putative Class Members.

62.    Comparison of hours paid to employees who were "clocked in" against the hours of operation will clearly demonstrate that:

    a.   all hours of operation are not accounted for in Defendants' pay records;

    b.   all hours worked are not accounted for in compensation paid to employees; and

    c.   hours before and after the hours the store is open to the public (2-3 hours per day) are regularly required to be worked "off-the-clock" and not compensated by Defendants.

63.    Plaintiffs and Putative Class Members were threatened with termination and other discipline if they did not clock out when instructed.  If Plaintiffs and the Putative Class Members refused to clock out when instructed, they were subject to discipline.

64.    As a result of Defendants' failure to record all hours worked, or compensate Plaintiffs and the Putative Class/Collective Members for all the hours worked, Plaintiffs were not paid all wages due, resulting in:

    a.   the failure to pay overtime compensation at time and one-half for all hours worked over forty (40) in a work week; and/or

    b.   the failure to pay the required minimum wage for hours worked (but not calculated as part of the minimum wage calculation.)

**Additional Uncompensated Work Performed at Home or Away from the Work Location**

65.    In addition to "running breaks" required of all servers, Plaintiffs Adrian Dail, Brittany Turner, and other Putative Class Members in "server/floor supervisor" and "server/crew leader" roles have been required to perform work from home which was not compensated, including administrative duties, emails, text and telephone communications regarding work issues, preparation of reports, replacements for "call outs", and other duties delegated by each of the salaried store managers for their respective locations.

66.    Plaintiffs who were assigned floor supervisor and/or crew leader duties in addition to their primary server duties worked (and continue to work) additional time, from one (1) to twenty (20), or more, hours "off-the-clock" per week for which they were not compensated.

67.    Plaintiff Adrian Dail was paid $12.00 per hour while performing server duties, with tips, and was supposed to be paid $15.00 per hour for non-server (administrative) duties, which was rarely paid.

68.    Plaintiff Brittany Turner was paid $12.50 per hour for server duties, with tips, and was supposed to be paid $15.50 for all other (administrative) duties, which was rarely paid.

69.    Plaintiff Fermin Martinez performed such administrative duties off-the-clock, including for Spanish speakers who "called out" and/or related scheduling when the floor supervisor was not available. He estimates that off-the-clock work amounts to twenty (20) hours per week.

70.    Plaintiffs Adrian Dail, Brittany Turner and Kathy Turner (server/floor supervisors) and Sabrina Miller, Fermin Martinez, Barbara Zeuch, and Melissa Powers (server/crew leaders) are regularly required to "clock out" to go on "errands" to pick up supplies required for their restaurant's operations.

71.    Therefore, in addition to "off-the-clock" hours required at the work location, such Plaintiffs and similarly situated Putative Class Members were, on a regular and ongoing basis, required to work "off-the-clock" hours away from the work location without pay.

**Unpaid Work at Defendants' Various Locations**

72.    Plaintiff Martinez has additionally been required to perform maintenance work at various Defendants' locations during a work week in which he had worked performing restaurant

18

duties as a "floor supervisor", but Defendants did not include these hours as part of his assigned restaurant pay.

73.      Rather, Defendants paid Martinez and like Putative Class Members, in cash or by separate check allocated to a different Golden Corral restaurant without adding such hours to his weekly work totals, thereby preventing him from receiving overtime compensation.

74.      In addition to work performed "off-the-clock," Plaintiff Sabrina Miller has worked at her present location (the Newport News restaurant) since March 18, 2023, over two (months), or 8 pay periods.  Although she is supposed to be paid weekly, she has received only three (3) paychecks, each of which incorrectly reflected hours worked and overstated tips received.

75.      Plaintiff Powers still works at the Newport News location. As recently as June 15, 2023, Powers was instructed to clock out and wait for a bus that was running late. She was required to wait at the store and was not allowed to leave. Powers waited for over an hour at the store, off the clock, until her bus arrived.

76.      The failure to include all hours worked in the calculation of Plaintiffs Martinez, Miller, Powers, and similarly situated Putative Class Members, understated their total weekly hours worked, and thus, entitlement to pay at overtime for all hours worked in excess of forty (40) in a work week and/or minimum wage rates reflecting all hours worked in a work week.

**Failure to Pay Overtime Compensation Due**

77.      Plaintiffs and the Putative Class/Collective Members who routinely worked in excess of forty (40) hours per work week have not been paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per work week.

**Failure to Pay Minimum Wages Due**

78.    Except as noted herein, Plaintiffs performing server duties were paid hourly wages ranging from $2.13 to $7.25, plus tips.

79.    On information and belief, Defendants claimed the "tip credit" permitted by 29 U.S.C. § 203(m)(2)(A) (Section 3(m)(2)(A)) and 29 C.F.R. § 531.50 (permitting an employer to meet minimum wage obligations by assuring that the employees receive a combination of payment of $2.13/hour and tips totaling no less than the federal minimum wage, now $7.25 per hour) when it did not qualify for such credit. Moreover, employees were improperly paid only a tip credit rate despite performing considerable non-tipped work.

80.    Plaintiffs and the Putative Class/Collective Members whose work included the receipt of tips were regularly required to log into Defendants' computer system to claim tips not received, so that Defendants could claim a "tip credit" for employees' hours worked to which it was not legally entitled (and for which the salaried store manager was rewarded with a monetary bonus for keeping labor costs low or below budget).

81.    Often, employees were instructed to return to the restaurant for the sole purpose of logging in to Defendant's "point-of-sale" ("POS") system to claim an inflated amount of tips which they had not received. Such false tip information permitted Defendants to game its system so that it could continue to pay servers $2.13 per hour rather than the minimum wage. As a result, for each such work week, tipped Plaintiffs and Putative Class Members did not receive minimum wages due under both federal and state law.

82.    When employees were unable to come into the restaurant on their day off to falsely inflate their tip amounts as instructed, Defendants' managerial employees would log into its POS system and enter the inflated tip amounts for such employees so that Defendants' system

would continue to calculate the employees' rate of pay at $2.13 per hour rather than the minimum wage.

83.    By forcing its employees to claim tips that they never received, such employees of each of the Defendant franchises did not receive (1) the tips which Defendants required that they claim, or (2) the minimum wage for all hours worked associated with the phantom tips which Defendants required tipped servers to claim.

84.    Unlawful practices included General Managers instructing servers to claim tips and/or the General Manager claiming tips on the server's behalf unbeknownst to the server.

85.    Plaintiffs and Putative Class Members were threatened with termination and other discipline if they did not falsely claim inflated tip amounts as instructed by their managers.

86.    Furthermore, if an employee did not falsely claim inflated tips as instructed, their manager would log into the POS system on employees' behalf, to falsely claim inflated tips in amounts as much as two to three times more than the amount needed in order for Defendants to appear to meet the required minimum wage threshold.

87.    For example, the Newport News General Manager verbally reprimanded servers for not having made enough in tips. On the second occasion (after a first verbal reprimand) the General Manager would write up the server. On a third occasion, the server was subject to termination.

88.    Defendants' policy or practice resulted in the regular failure to pay employees entitled to the payment of minimum wages all wages due for hours worked in a work week.

89.    Moreover, such phantom tips were reported by Defendants as earned income for tax purposes on Plaintiffs' and Putative Class members' Form W-2s.

90.    Defendants' illegal wage payment policies and practices have deprived Plaintiffs

and putative Class/Collective members of wages due in the work weeks in which work was performed.

91.    Defendants knowingly and deliberately failed to compensate Plaintiffs and the Putative Class/Collective Members for all hours worked and the proper amount of overtime on a routine and regular basis during the relevant time period(s).

92.    Plaintiffs and the Putative Class/Collective Members did not (and currently do not) perform work that meets the definition of exempt work under the FLSA or applicable state laws.

93.    Plaintiffs and the Putative Class/Collective Members seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and to recover all unpaid straight time, overtime, liquidated damages, and other damages owed under the state laws of Virginia as class actions pursuant to Federal Rule of Civil Procedure 23.

**Non-tipped "Side work"**

94.    Plaintiffs were tipped employees who, pursuant to Defendants' policies, were required to perform non-tipped work. Examples of non-tipped work include preparatory, pre-closing, and workplace maintenance tasks such as refilling sugar caddies, salt and pepper shakers, ice, condiments; cleaning tables, chairs, décor, lights, bathrooms, and air vents; and vacuuming and/or sweeping various areas of the restaurant (collectively "Side Work"). Plaintiffs performed "Side Work" in excess of one hour during each shift. Defendants violated the FLSA by requiring tipped employees to perform non-tipped duties and therefore violated the FLSA, 29 U.S.C. § 203(m).  Defendants further violated the FLSA by requiring Plaintiffs to spend more than thirty (30) continuous minutes performing non-tipped duties.

95.     Plaintiffs were tipped employees who, pursuant to Defendants' policies, also were required to perform Side Work and other non-tipped work that was unrelated to their tip-producing work, such as carrying, unboxing, and stocking the restaurant with deliveries from food and beverage vendors. Defendants violated the FLSA by requiring tipped employees to perform these non-tipped and unrelated duties and by not paying those employees minimum wage for performing such duties.

96.     Plaintiffs were tipped employees who, pursuant to Defendants' policies, were not compensated an appropriate wage when performing non-tipped work. Instead, most Plaintiffs were compensated approximately at the rate of $2.13 per hour for all hours, regardless of whether the employee was performing tipped or non-tipped work. As a result of Defendants' imposition of a tip credit rate for all hours worked, Plaintiff and the members of the Collective members were forced to perform minimum entitled wage work at an hourly rate that was less than minimum wage.

97.     Plaintiffs and the members of the Class/Collective are entitled to at least the applicable minimum wage for all time worked, without application of a tip credit. Furthermore, Plaintiff and the members of the Collective who worked in excess of forty hours per week are entitled to receive overtime compensation, without application of a tip credit.

**Inaccurate Filing of Wage Information**

98.     Based on the foregoing, Defendants have filed inaccurate wage information regarding the Plaintiffs and Putative Class Members, subjecting it to liability and statutory penalties and other relief pursuant to 26 U.S.C. §7434.

**Summary**

99.     Plaintiffs and the Putative Class Members seek to recover all unpaid wages,

liquidated damages, and other damages owed under state and/or federal law for uncompensated regular wages for time worked off-the-clock, including time not calculated for overtime and/or minimum wage compensation.

100.    Plaintiffs pray that all similarly situated workers be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to the collective actions made part of this lawsuit.

101.    Plaintiffs also pray that the Rule 23 classes are certified as defined herein, and the Plaintiffs designated herein be named as Class Representatives.

## V.    ADDITIONAL COMMON CONTROL FACTS

102.    According to its website and on information and belief, Defendants' principal, Houston Odom, has owned and operated some 20 Golden Corral restaurant franchises in four states, employing some 2,000 employees, controlled by Defendant BOTH, Inc.'s regional management operating from Virginia Beach headquarters and registered office.

103.    BOTH Inc. is believed to currently operate and oversee the management and administration of 14 Golden Corral restaurants under centralized management operating from Both, Inc.'s central office in Virginia Beach, VA, to which each Defendant LLC restaurant reports. Seven (7) of the restaurants are located in Virginia, one (1) is located in South Carolina, one (1) is located in Delaware, and the remaining five (5) are located in Maryland.

104.    On information and belief, BOTH, Inc. supervises the operations of each of its Virginia, South Carolina, Maryland, and Delaware restaurants from its central office located at the Virginia Beach, VA office. This office is also listed as the registered agent address for each of the above-listed Defendant LLC restaurants.

105.    During the applicable statute of limitations' periods, personnel from BOTH, Inc.'s

24

Virginia Beach, VA headquarters office have regularly visited, and overseen the operations of,

its restaurant General Managers.  Moreover, on occasion, such central office managers have

filled in for restaurant General Managers, and, as such, are directly aware of and/or have

implemented the payroll practices complained of herein.

## VI.   CAUSES OF ACTION

### ALLEGATIONS APPLICABLE TO COUNTS ONE AND TWO
**(Collective Actions Alleging FLSA Violations)**

### COLLECTIVE ACTION ALLEGATIONS

106.   Plaintiffs bring their FLSA claim as a collective action.

107.   The **FLSA Minimum Wage Collective action** is defined as follows:

> **All hourly tipped Golden Corral employees who were employed by Defendants at any time within the three years preceding the filing of Plaintiffs' Complaint through the final disposition of this matter who were paid less than the federal minimum wage for all hours worked and or were paid below minimum wage for side work ("FLSA Minimum Wage Collective Members").**

All Named Plaintiffs are representatives of the FLSA Minimum Wage Collective.

108.   The **FLSA Overtime Collective action** is defined as follows:

> **All hourly Golden Corral employees who were employed by Defendants at any time within the three years preceding the filing of Plaintiffs' Complaint through the final disposition of this matter who worked in excess of forty (40) hours per week. ("FLSA Overtime Collective Members").**

109.   Full-time Plaintiffs Adrian Dail, Melissa Powers, Brittany Turner, Kathy Turner,

Fermin Martinez, Ashley Parrish, Kellie Pierce and Esteban Feliciano are representatives of the

FLSA Minimum Wage Collective ("FLSA Overtime Collective Representatives")

110.   Defendants' failure to pay Plaintiffs and the FLSA Collective Members for all

hours worked and overtime compensation at the rates required by the FLSA, results from

generally applicable policies and practices of Defendants and does not depend on the personal circumstances of Plaintiffs or the FLSA Collective Members.

111.    Other similarly situated employees of Defendants have been victimized by Defendants' patterns, practices, and policies, which are in willful violation of the FLSA.

112.    Plaintiffs, and those similarly situated, performed the same primary job duties.

113.    The specific job titles or precise job requirements of the various FLSA Collective Members do not prevent collective treatment.

114.    All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be paid for all hours worked and at the proper overtime rate for all hours worked in excess of forty (40) hours per work week.

115.    Defendants maintain the names, addresses, email addresses, and phone numbers for potential Collective Action Members in their payroll or personnel records.

116.    Although the issue of damages may be individual in character, this does not detract from the common nucleus of liability facts.

117.    Absent a collective action, many members of the proposed FLSA collective likely will not obtain redress for their injuries and Defendants will unlawfully retain the proceeds of its violations.

118.    Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide judicial consistency.

119.    Accordingly, the FLSA collective of similarly situated Plaintiffs should be certified as defined as in herein and notice should be promptly sent to the putative members of the proposed Collective Actions.

120.    During the relevant period, Plaintiffs and the FLSA Collective Members have been employees within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

121.    During the relevant period, Defendants have been employers within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

122.    At all times hereinafter mentioned, Defendants have been engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that that enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

123.    During the respective periods of Plaintiffs' and the FLSA Collective Members' employment by Defendants, these individuals have provided services for Defendants that involved interstate commerce for purposes of the FLSA.

124.    In performing the operations hereinabove described Plaintiffs and the FLSA Collective Members have been engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

125.    Specifically, Plaintiffs and the FLSA Collective Members are non-exempt hourly

restaurant employees of Defendants, who assisted customers. 29 U.S.C. § 203(j).

126.    At all relevant times, Plaintiffs and the FLSA Minimum Wage Collective Members have been individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206–07.

127.    The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee and personnel records of Defendants, but is believed to be between 1,120-1,400 putative Collective Members across Virginia, South Carolina, Maryland and Delaware.

## COUNT ONE
### (Collective Action Alleging FLSA Minimum Wage Violations)

128.    Plaintiffs and the FLSA Minimum Wage Collective Members have suffered damages and continue to suffer damages as a result of Defendants' acts or omissions as described herein. Defendants are in possession and control of necessary documents and information from which Plaintiffs would be able to precisely calculate damages.

129.    Defendants are sophisticated business entities and therefore knew (or should have known) their pay policies were in violation of the FLSA.

130.    The decision and practice by Defendants to not pay, or to not properly pay, for all hours worked was neither reasonable nor in good faith.

131.    Defendants' decision to avail themselves of the benefit of the tip credit rate for employees, despite not being eligible to do so, was neither reasonable nor made in good faith.

132.    Accordingly, Plaintiffs, the FLSA Minimum Wage Collective Members, and the FLSA Overtime Collective Members are entitled to be paid minimum wages for all hours worked pursuant to the FLSA, plus liquidated damages, and attorneys' fees and costs.

## COUNT TWO

**(Collective Action Alleging FLSA Overtime Violations)**

133.    Defendants have violated provisions of Sections 6, 7 and 15 of the FLSA, 29

U.S.C. §§ 206–7, and 215(a)(2) by employing individuals in an enterprise engaged in commerce

or in the production of goods for commerce within the meaning of the FLSA for work weeks

longer than forty (40) hours without compensating such non-exempt employees for all hours

worked in excess of forty (40) hours per week at rates at least one and one-half times the regular

rates for which they were employed.

134.    Full-time Plaintiffs and the FLSA Overtime Collective Members have suffered

damages and continue to suffer damages as a result of Defendants' acts or omissions as

described herein; though Defendants are in possession and control of necessary documents and

information from which Plaintiffs would be able to precisely calculate damages.

135.    Moreover, Defendants knowingly, willfully, and with reckless disregard carried

out their illegal pattern of failing to pay Full-Time Plaintiffs and other similarly situated

employees for all hours worked and the proper amount of overtime compensation for all hours

worked over forty (40) each week. 29 U.S.C. § 255(a).

136.    Defendants knew or should have known their pay practices were in violation of

the FLSA.

137.    Defendants are sophisticated business entities, and therefore knew (or should have

known) their pay policies were in violation of the FLSA.

138.    The decision and practice by Defendants to not pay the proper amount of

overtime for all hours worked over forty (40) each week was neither reasonable nor in good

faith.

139.    Accordingly, Full-time Plaintiffs and the FLSA Collective Members who have

worked over forty (40) hours in work weeks during the applicable statute of limitations period

are entitled to be paid overtime wages for all hours worked in excess of forty (40) hours per work

week pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay,

plus liquidated damages, and attorneys' fees and costs.

## ALLEGATIONS APPLICABLE TO COUNTS THREE THROUGH FIVE
### (Class Actions Alleging Violations of Virginia State Wage Laws)

## CLASS ACTION ALLEGATIONS

140.    Plaintiffs bring their Virginia state claims pursuant to Rule 23(b)(3) of the Federal

Rules of Civil Procedure.

**A. Class Definitions**

141.    Plaintiffs seek to maintain claims pursuant to Virginia Wage Payment Act

(VWPA) Va. Code § 40.1-29.2. Full-time Plaintiffs seek to maintain claims pursuant to Virginia

Overtime Wage Act (VOWA) Va. Code § 40.1-29.  Virginia Minimum Wage Act (VMWA) Va.

Code § 40.1-28.8 *et seq.* individually, and on behalf of all similarly situated individuals

employed by Defendants to work in Virginia based Golden Corrals ("Virginia Defendants")

since July 1, 2020.

142.    The **Virginia Unpaid Wage Class** is defined as:

> **All hourly Golden Corral employees who were employed by Defendants owned Golden Corral restaurants in Virginia, at any time from July 1, 2020, through the final disposition of this matter who were not paid for all hours worked and or were paid below minimum wage for side work. ("Virginia Unpaid Wage Class")**

143.    All Named Plaintiffs are representatives of the Virginia Unpaid Wage Class.

144.    The **Virginia Overtime Class** is defined as**:**

> **All hourly Golden Corral employees who were employed by Defendants at any time within the three years preceding the filing of Plaintiffs' Complaint through the final disposition of this matter who worked in excess of forty (40) hours per week. ("Virginia Overtime Class").**

145.    All Full-time Plaintiffs Adrian Dail, Brittany Turner, Kathy Turner, Fermin Martinez, Ashley Parrish, Kellie Pierce, Melissa Powers, and Esteban Feliciano are representatives of the Virginia Overtime Class.

146.    The **Virginia Minimum Wage Class** is defined as:

> **All hourly Golden Corral employees who were employed by Defendants at any time within the three years preceding the filing of Plaintiffs' Complaint through the final disposition of this matter who were paid less than the then applicable Virginia minimum wage ("Virginia Minimum Wage Class").**

147.    All Named Plaintiffs are representatives the Virginia Minimum Wage Class ("Virginia Minimum Wage Class Representatives").

**B. Efficiency of Class Prosecution of Common Claims**

148.    Certification of classes of current and hourly former employees is the most efficient and economical means of resolving the questions of law and fact which are common to the claims of the Class Representatives and the proposed class. Conversely, proceeding on an individual case basis will require the filing of potentially scores of duplicative individual suits, wasting judicial time and resources and creating the risk of inconsistent or varying adjudications of common issues.

**C. Numerosity and Impracticality of Joinder**

149.    The classes which the Class Representatives seek to represent are so numerous that joinder is impracticable. On information and belief, the putative Virginia Class Members include approximately 560-700 current and former Golden Corral employees.

150.    These classes are comprised of Golden Corral employees who worked in Virginia. The relatively small size of individual claims, the geographical dispersion of the class, and the financial circumstances of the class members make the maintenance of separate actions by each class member economically infeasible. The classes are so numerous that joinder of all members is impracticable.

**D. Common Questions of Law and Fact**

151.    Virginia Defendants use of employees' labor presents common issues of fact in this matter. Moreover, the putative class members all challenge the same pay practices, and those practices apply uniformly and present identical questions of law and fact with respect to the Class Representatives and those whom they seek to represent.

**E. Typicality of Claims and Relief Sought**

152.    The claims of the Class Representatives are typical of those of the class members as a whole in that their claims are based on collective business and compensation practices.

**F. Adequacy of Representation**

153.    Plaintiffs are adequate class representatives for the classes. Their interests are co-extensive with those of the members of the proposed classes they seek to represent. They are committed to being representatives of the class and have retained counsel experienced in prosecuting class action employment cases to protect the interests of the class.

154.    Plaintiffs know of no conflicts of interest among members of the class.

**G. Rule 23(b)(3) Requirements**

155.    Common questions of law and fact predominate over any questions affecting only individual members because the basis of the claims herein is the common failure to pay wages, pay minimum wage and overtime wages.

156.    A class action is superior to other available methods for adjudicating the controversy because other methods would involve the filing of numerous individual claims that are based on the same centralized scheduling and compensation facts and the same legal issues regarding same. Numerous individual cases similar to Plaintiffs' would clog the Court's docket and waste judicial time and resources. Moreover, multiple individual cases based on the same legal issues could lead to inconsistent or varying adjudications of the same issues.

157.    The Class Representatives and counsel are not aware of any other litigation concerning the controversy that has already begun by proposed class members within the Commonwealth of Virginia.

158.    It is desirable to concentrate the claims in this forum because the employment practices complained with respect to the Class Representatives occurred in this forum.

159.    The Class Representatives and counsel do not foresee any substantial difficulties in managing a class action and counsel is experienced in managing class action litigation in this forum.

## COUNT THREE
**(Class Action Alleging Failure to Pay Wages Pursuant to VWPA Va. Code § 40.1-29)**

160.    The **Virginia Unpaid Wage Class** is defined as:

> **All hourly Golden Corral employees who were employed by Defendants' owned Golden Corral restaurants in Virginia, at any time from July 1, 2020, through the final disposition of this matter who were not paid for all hours worked and or were paid below minimum wage for side work. ("Virginia Unpaid Wage Class")**

161.    Effective July 1, 2020, the VWPA was amended to provide employees with a private right of action for wage theft.

162.    At all relevant times, Virginia Defendants have been "employers" within the

33

meaning contemplated by VWPA, VA. CODE § 40.1-29.

163.    At all relevant times, Plaintiffs, and those similarly situated, have been "employees" within the meaning contemplated by VWPA, VA. CODE § 40.1-29.

164.    Plaintiffs and the putative unpaid wage class members were or have been employed by Virginia Defendants since July 1, 2020, and have been covered employees entitled to the protections of VWPA, Virginia Code § 40.1-29.

165.    The VWPA requires that employers establish regular pay periods and pay all wages due on time. *See* Code of Va. § 40.1-29(A).

166.    The VWPA prohibits employers from withholding any part of the wages of its employees. *See* Code of Va. § 40.1-29(B).

167.    Virginia Defendants withheld and failed to pay Plaintiffs and putative Virginia Unpaid Wage Class Members all of their owed wages on their regularly scheduled paydays because of their policies requiring them to work off-the-clock.

168.    Plaintiffs and the putative Virginia Unpaid Wage Class Members seek to recover their unpaid wages owed to them as a result of Virginia Defendants' company-wide policies.

169.    Plaintiffs and the putative Virginia Unpaid Wage Class Members have suffered damages and continue to suffer damages as a result of Virginia Defendants' acts or omissions as described herein. Virginia Defendants are in possession and control of necessary documents and information from which Plaintiffs and the Virginia Unpaid Wage Class Members would be able to precisely calculate damages.

170.    The Virginia Defendants have knowingly violated Va. Code § 40.1-29 by failing to pay Plaintiffs, and those similarly situated, the wages for required working time occurring off-the-clock.

171.    Virginia Defendants' policies and procedures requiring such off-the-clock work has deprived Plaintiffs, and those similarly situated, of their earned wages.

172.    Plaintiffs, on behalf of themselves and the Virginia Unpaid Wage Class Members seek recovery of the unpaid wages earned and due, double or treble damages, attorneys' fees, and costs. *See* Code of Va. § 40.1-29(J)-(K)

173.    Plaintiffs bring this action for all violations alleged herein commencing July 1, 2020, and ongoing.

174.    The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Virginia Defendants.

### COUNT FOUR
**(Class Action Alleging Failure to Pay Wages Pursuant to VOWA Va. Code § 40.1-29.2)**

175.    The **Virginia Overtime Class** is defined as**:**

> **All hourly Golden Corral employees who were employed by Defendants at any time within the three years preceding the filing of Plaintiffs' Complaint through the final disposition of this matter who worked in excess of forty (40) hours per week. ("Virginia Overtime Class").**

176.    Since July 1, 2021, Virginia Defendants have been "employers" within the meaning of VOWA, Virginia Code § 40.1-29.2(A).

177.    Since July 1, 2021, Virginia Overtime Class Representatives and those similarly situated, have met the definition of "employee" within the meaning of VOWA, VA. CODE § 40.1-29.2(A).

178.    Virginia Overtime Class Representatives and the putative Virginia Overtime Class Members were or have been employed by Virginia Defendants at any time since July 1, 2021, and have been covered employees entitled to the protections of VOWA.

179.    Virginia Defendants are not exempt from paying Virginia Overtime Class Representatives and the putative Virginia Overtime Class Members overtime premiums in accordance with Virginia Code § 40.1-29.2.

180.    The relevant iteration of VOWA went into effect on July 1, 2021, and for the first time provided employees in Virginia with a state law right of action to recover overtime premiums earned for all work performed in excess of 40 hours per week.

181.    VOWA requires that an employer – Virginia Defendants – pay its hourly employees an overtime premium of not less than one and one-half times the employee's regular rate of pay. *See* Code of Va. § 40.1-29.2(B).

182.    Full-time Plaintiffs and the putative Virginia Overtime Class Members are non-exempt hourly sales agent call-center employees of Virginia Defendants who are entitled to the protections of VOWA.

183.    Virginia Defendants have violated VOWA by failing to pay Full-time Plaintiffs, Plaintiffs working over forty (40) hours in a work week, and putative Virginia Overtime Class Members for all of the time spent working for Defendants "off-the-clock," resulting in their failure to pay the required overtime premium for time spent working in excess of forty (40) hours per week.

184.    Virginia Defendants are not entitled to any of the exemptions under VOWA to avoid paying Full-time Plaintiffs or the putative Virginia Overtime Class Members the required overtime premium for time spent working in excess of 40 hours per week.

185.    Virginia Overtime Class Representatives and the Virginia Overtime Class Members seek to recover their unpaid overtime owed to them as a result of Virginia Defendants' company-wide policies.

186.    Virginia Overtime Class Representatives and the putative Virginia Overtime Class Members have suffered damages and continue to suffer damages as a result of Virginia Defendants' acts or omissions as described herein; though Defendants are in possession and control of necessary documents and information from which Full-time Plaintiffs and the Virginia Overtime Class Members would be able to precisely calculate damages.

187.    The Virginia Defendants have knowingly violated Va. Code § 40.1-29.2 by failing to pay Plaintiffs, and those similarly situated, overtime premiums for required working time occurring off-the-clock.

188.    Virginia Defendants' policies and procedures requiring such off-the-clock work have deprived Plaintiffs, and those similarly situated, of their earned overtime premiums.

189.    Virginia Overtime Class Representatives on behalf of themselves and the Virginia Overtime Class Members, seek recovery of the unpaid overtime premiums earned and due, double or treble damages, attorneys' fees, and costs. *See* Code of Va. § 40.1-29.2(F) (incorporating the enforcement and damages provisions of the VWPA at Code of Virginia § 40.1-29(J)).

190.    Virginia Overtime Class Representatives bring this action for all violations alleged herein commencing July 1, 2021, and ongoing.[4]

191.    The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Virginia Defendants.

<u>**COUNT FIVE**</u>
**(Class Action Alleging Failure to Pay Minimum Wage pursuant to VMWA Va. Code § 40.1-28.8 *et seq.*)**

192.    The **Virginia Minimum Wage Class** is defined as**:**

---

[4] Certain provisions of the original VOWA sun-setted June 30, 2022, and were replaced with the current iteration of VOWA (which substantially mirrors the FLSA).

**All hourly Golden Corral employees who were employed by Defendants at any time within the three years preceding the filing of Plaintiffs' Complaint through the final disposition of this matter who were paid less than the then applicable Virginia minimum wage ("Virginia Minimum Wage Class").**

193.    At all relevant times, Virginia Defendants have been "employers" within the meaning contemplated by VMWA, VA. CODE § 40.1-28.9.

194.    At all relevant times, Plaintiffs, and those similarly situated have been "employees" within the meaning contemplated by VMWA, Va. Code § 40.1-28.9.

195.    Virginia Minimum Wage Class Representatives and the putative minimum wage class members were or have been employed by Virginia Defendants since July 1, 2020, and have been covered employees entitled to the protections of VMWA, Va. Code § 40.1-28.8 *et seq*.

196.    The VMWA required that prior to May 1, 2021, employers pay their employees the federal minimum wage. Va. Code § 40.1-28.10(A)

197.    From May 1, 2021, until January 1, 2022, the VMWA required every employer to pay each of its employees' wages at a rate no less than the greater of (i) $9.50 per hour or (ii) the federal minimum wage. Va. Code § 40.1-28.10(B)

198.    From January 1, 2022, until January 1, 2023, the VMWA required that every employer pay its employees' wages at a rate not less than the greater of (i) $11.00 per hour or (ii) the federal minimum wage. Va. Code § 40.1-28.10(C)

199.    From January 1, 2023, until January 1, 2025, the VMWA required that every employer pay its employees' wages at a rate not less than the greater of (i) $12.00 per hour or (ii) the federal minimum wage. Va. Code § 40.1-28.10(D)

200.    Virginia Defendants withheld and failed to pay Virginia Minimum Wage Class Representatives and putative Virginia Minimum Wage Class Members minimum wages on their

regularly scheduled paydays because of their policies requiring them to work off-the-clock and tip themselves up to the required minimum wage, but not actually provide employees with such "tipped" wages.

201.    Despite requiring workers to perform excessive non-tipped work, Defendants unjustifiably availed themselves to the benefit of the tip credit rate, illegally paying Plaintiffs and putative Virginia Minimum Wage Class Members well less than minimum wage.

202.    Plaintiffs and the putative Virginia Minimum Wage Class Members seek to recover their unpaid wages owed to them as a result of Virginia Defendants' company-wide policies.

203.    Plaintiffs and the putative Virginia Minimum Wage Class Members have suffered damages and continue to suffer damages as a result of Virginia Defendants' acts or omissions as described herein. Virginia Defendants are in possession and control of necessary documents and information from which Plaintiffs and the Virginia Minimum Wage Class Members would be able to precisely calculate damages.

204.    The Virginia Defendants have knowingly violated Va. Code § 40.1-28.8 *et seq.* by failing to pay Plaintiffs, and those similarly situated, the minimum wages for required working time.

205.    Virginia Defendants' policies and procedures requiring such off-the-clock work have deprived Plaintiffs, and those similarly situated, of their earned wages.

206.    Plaintiffs, on behalf of themselves and the Virginia Minimum Wage Class Members seek recovery of the unpaid wages and interest from the date owed at eight percent (8%), attorneys' fees, and costs. *See* Code of Va. § 40.1-28.12

207.    Plaintiffs bring this action for all violations alleged herein commencing July 1,

2020, and ongoing.

208.    The precise size and identity of the proposed class should be ascertainable from

the business records, tax records, and/or employee or personnel records of Virginia Defendants

## COUNT SIX
**(Class Action Alleging Inaccurate Reporting of Wages Violative of 26 U.S.C. § 7434)**

**A. Class Definitions**

209.    Plaintiffs, the Rule 23 Class Representatives, seek to maintain claims pursuant to

26 U.S.C. § 7434 individually, and on behalf of all similarly situated individuals employed by

Defendants to work in Golden Corrals since July 1, 2020.

210.    The **Inaccurate Wages IRS Class** is defined as:

> **All hourly Golden Corral employees who were employed by
> Defendants at any time within the three years preceding the
> filing of Plaintiffs' Complaint through the final disposition of
> this matter who were issued W-2s that inaccurately stated the
> amount of wages including tips received.**

211.    All Named Plaintiffs are representatives of the Inaccurate Wages IRS Class

("Inaccurate Wage IRS Class Representatives").

**B. Efficiency of Class Prosecution of Common Claims**

212.    Certification of a class of employees who were issued W2s that misstated how

much they were paid is the most efficient and economical means of resolving the questions of

law and fact which are common to the claims of the Inaccurate Wage IRS Class Representatives

and the proposed class. Conversely, proceeding on an individual case basis will require the filing

of potentially scores of duplicative individual suits, wasting judicial time and resources and

creating the risk of inconsistent or varying adjudications of common issues.

**C. Numerosity and Impracticality of Joinder**

213.    The class which the Inaccurate Wage IRS Class Representatives seek to represent is so numerous that joinder is impracticable. On information and belief, the putative class during the liability periods number between approximately 500-600 current and former Golden Corral employees.

214.    This class is comprised of Golden Corral employees. The relatively small size of individual claims, the geographical dispersion of the class, and the financial circumstances of the class members make the maintenance of separate actions by each class member economically infeasible. The classes are so numerous that joinder of all members is impracticable.

**D. Common Questions of Law and Fact**

215.    Defendants' use of employees' labor presents common issues of fact in this matter. Moreover, the putative class members all challenge the same pay practices, and those practices apply uniformly and present identical questions of law and fact with respect to the Inaccurate Wage IRS Class Representatives and those whom they seek to represent.

**E. Typicality of Claims and Relief Sought**

216.    The claims of the Inaccurate Wage IRS Class Representatives are typical of those of the class members as a whole in that their claims are based on collective business and compensation practices.

**F. Adequacy of Representation**

217.    The Inaccurate Wage IRS Class Representatives are adequate class representatives for the classes. Their interests are co-extensive with those of the members of the proposed classes they seek to represent. They are committed to being representatives of the class and have retained counsel experienced in prosecuting class action employment cases to protect the interests of the class.

218.    Plaintiffs know of no conflicts of interest among members of the class.

**G. Rule 23(b)(3) Requirements**

219.    Common questions of law and fact predominate over any questions affecting only individual members because the basis of the claims herein is the common failure to pay wages, pay minimum wage and overtime wages.

220.    A class action is superior to other available methods for adjudicating the controversy because other methods would involve the filing of numerous individual claims that are based on the same centralized scheduling and compensation facts and the same legal issues regarding same. Numerous individual cases similar to Plaintiffs' would clog the Court's docket and waste judicial time and resources. Moreover, multiple individual cases based on the same legal issues could lead to inconsistent or varying adjudications of the same issues.

221.    The Inaccurate Wage IRS Class Representatives and counsel are not aware of any other litigation concerning the controversy that has already begun by proposed class members within the Commonwealth of Virginia.

222.    It is desirable to concentrate the claims in this forum because the employment practices complained with respect to the Class Representatives occurred in this forum.

223.    The Inaccurate Wage IRS Class Representatives and counsel do not foresee any substantial difficulties in managing a class action and counsel is experienced in managing class action litigation in this forum.

**<u>INACCURATE REPORTING OF WAGES PURSUANT TO 26 U.S.C. § 7434</u>**

224.    Defendants are required by federal law to accurately report payments made regarding wages paid on informational returns filed with the government.

225.    Defendants instructed Plaintiffs to enter tips into its "point-of-sale" ("POS")

system at higher amounts than they actually received, but Defendants reported to the IRS that Plaintiffs received the falsely inflated amounts entered into its POS system.

226.   Defendants have inaccurately reported material statements regarding the Inaccurate Wage IRS Class Representatives' and Putative Class Members' earnings and required withholdings.

227.   26 U.S. Code § 7434(A) provides that if any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return.

228.   It also provides that the Defendants are liable to Inaccurate Wage IRS Class Representatives and putative class members in an amount equal to the greater of $5,000 or the sum of: any actual damages sustained by the plaintiff as a proximate result of the filing of the fraudulent information return (including any costs attributable to resolving deficiencies asserted as a result of such filing), the costs of the action, and in the court's discretion, reasonable attorneys' fees.

## VII.   <u>RELIEF SOUGHT</u>

229.   Plaintiffs respectfully pray for judgment against Defendants as follows:

a.   For an Order certifying the FLSA Minimum Wage and Overtime Collectives as defined herein and requiring Defendants to provide the names, addresses, e-mail addresses, and telephone numbers of all putative collective action members, and authorizing notice of this action  be sent to all putative FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

b.   For an Order certifying the Virginia Unpaid Wage Class under Federal Rule 23 as defined herein, designating Plaintiffs as the Class Representatives of the Virginia

Unpaid Wage Class;

      c.     For an Order certifying the Virginia Overtime Class under Federal Rule 23 as defined herein and designating Plaintiffs Adrian Dail, Brittany Turner, Kathy Turner, Fermin Martinez, Ashley Parrish, Kellie Pierce, Melissa Powers, and Esteban Feliciano as the Class Representatives of the Virginia Overtime Class;

      d.     For an Order certifying the Virginia Minimum Wage Class under Federal Rule 23 as defined herein and designating Plaintiffs as the Class Representatives of the Virginia Minimum Wage Class;

      e.     For an Order certifying the Inaccurate Reporting Class under Federal Rule 23 as defined herein and designating Plaintiffs as representatives of the Inaccurate Wages IRS Class.

      f.     For an Order pursuant to Section 16(b) of the FLSA finding Defendants liable to Plaintiffs (and those FLSA Collective Members who have joined in the suit)for unpaid back wages due, and for liquidated damages equal in amount to the unpaid compensation found due;

      g.     For an Order pursuant to VMWA, Code of Virginia § 40.1- 28.12, awarding Plaintiffs and the Virginia Minimum Wage Class Members the amount of the unpaid minimum wages, plus interest at eight per centum per annum, and attorney's fees;

      h.     For an Order pursuant to VWPA, Code of Virginia § 40.1-29, awarding Plaintiffs and the Virginia Unpaid Wage Class Members unpaid wages, double damages or triple damages upon a finding that Defendants' violations were "knowing," prejudgment interest, costs, attorneys' fees, and any other damages allowed by law;

      i.     For an Order pursuant to VOWA, Code of Virginia § 40.1-29.2, awarding

Plaintiffs and the Virginia Overtime Class Members unpaid wages, double damages or triple damages upon a finding that Defendants' violations were "knowing," prejudgment interest, costs, attorneys' fees, and any other damages allowed by law;

       j.    For an Order pursuant to 26 U.S. Code § 7434, awarding Plaintiffs and Inaccurate Wages IRS Class Members an amount equal to the greater of $5,000 or the sum of their actual damages, the costs of the action and in the Court's discretion attorney's fees.

       k.    For an Order awarding costs and expenses of this action;

       l.    For an Order awarding attorneys' fees pursuant to the FLSA and/or Virginia law, and/or 26 U.S. Code § 7434;

       m.    For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

       n.    For an Order awarding Plaintiffs service awards as permitted by law;

       o.    For an Order granting such other and further relief as may be necessary and appropriate.

Date:   June 16, 2023        Respectfully submitted,

        By:    /s/ *Harris D. Butler, III*
             Harris D. Butler, III (VSB No. 6483)
             Craig J. Curwood (VSB No. 43975)
             Zev H. Antell (VSB No. 74634)
             Samantha Galina (VSB No. 96981)
             **BUTLER CURWOOD, PLC**
             140 Virginia Street, Suite 302
             Richmond, Virginia 23219
             Telephone: (804) 648-4848
             Facsimile: (804) 237-0413
             Email: harris@butlercurwood.com
                craig@butlercurwood.com
                zev@butlercurwood.com
                samantha@butlercurwood.com
             *Attorneys for Representative Plaintiffs and Putative Collective/Class Members*