IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

**ADRIAN DAIL, *et al.*,**
**Individually and on behalf of all**
**Others similarly situated,**

***Plaintiffs,***

**v.** **CASE NO. 2:23-cv-276-JKW-LRL**

**BOTH, INC., *et al.*,**

***Defendants.***

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND FOR DISMISSAL OF PLAINTIFFS' CASE WITH PREJUDICE**

Plaintiffs Adrian Dail, individually and on behalf of all others similarly situated ("Plaintiffs"), and Defendants, BOTH, INC., et al., ("Defendants") (collectively, the "Parties"), by and through their undersigned counsel, hereby jointly state as follows in support of their Joint Motion for Approval of Settlement Agreement and for Dismissal of Plaintiffs' Case with Prejudice.

## I. PROCEDURAL AND FACTUAL BACKGROUND

This action was originally brought on June 16, 2023, by the Plaintiffs who are/were employed as tipped servers at two of Defendants' Virginia Golden Corral Restaurant locations. The action was subsequently amended on June 26, 2023 and October 31, 2024. Plaintiffs alleged that they, and other servers, were not properly paid overtime, minimum, and regular wages under state and federal law. Specifically, Plaintiffs alleged that they performed work off-the-clock

resulting in unpaid regular and overtime wages and that they were improperly paid a sub-minimum tipped rate wage for hours ineligible for such treatment. Plaintiffs further alleged that they were assigned phantom tips in order to make it appear that minimum wages were properly paid. Plaintiffs sought class/collective action treatment for the claims alleged. Defendants vigorously denied all allegations of liability and averred multiple affirmative defenses. On October 22, 2024, Plaintiffs moved for class and FLSA collective certification. On August 20, 2025, the court issued a ruling denying in part and granting in part, Plaintiffs' Motion and directing the Parties to confer on a notice and notice program. Through a series of joint requests, the Court stayed the issuance of notice as the Parties discussed the possibility of resolution between the Defendants and the current 56 Plaintiffs.

Throughout the trajectory of the litigation, the Parties maintained an open dialogue regarding settlement. Prior to Court's ruling on certification, the matter was mediated before Magistrate Judge Leonard and again with a well-respected private wage & hour mediator. Those good faith efforts were ultimately unsuccessful, but they did serve as valuable foundation for the settlement now before the Court.

The Settlement Agreement resolves the claims in this litigation against the Defendants. Under the Settlement Agreement, each of the 56 Plaintiffs will receive an average settlement payment of roughly $6,090.00 after the payment of all costs, service awards, administrative fees, and attorneys' fees. Plaintiffs and their Counsel are satisfied that the proposed settlement is fair and reasonable. The Parties therefore ask the Court to approve the Settlement Agreement.

## II. SUMMARY OF SETTLEMENT TERMS

The Parties move for approval of the Settlement Agreement, attached hereto as Exhibit 1, and which contains terms which are generally summarized as follows:

**A. *The Settlement Fund***

The Parties have agreed to settlement of this matter for $575,000. *See* Exhibit 1. The Parties have agreed to a settlement amount that results in an average settlement for each of the Plaintiffs of approximately $6,090.00 The Parties have agreed that, because the settlement consists of potential back-wages and liquidated damages, costs and attorney fees, the settlement paid to Plaintiffs shall be allocated as one half wages, reported as W-2, and one half non-wages reported on IRS Form 1099's. *See id*. The Plaintiffs shall be solely responsible for all employee-side tax obligations associated with such receipt. *See id.*

**B. *Releases***

Subject to the terms of the Settlement Agreement, each Plaintiff will release their claims against the Defendants for "any and all state, local or federal claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against the Released Parties (as defined herein) for alleged unpaid wages, liquidated or other damages, unpaid costs, penalties (including late payment penalties), premium pay, interest, attorneys' fees, litigation costs, restitution or any other compensation and relief arising under the FLSA and any other state or local wage-related law applicable to the work performed for the Defendants during the Release Period."

**C. *Attorneys' Fees and Litigation Costs***

Under the Settlement Agreement, subject to Court approval, Plaintiffs' counsel will receive a Counsel Payment of $230,000.00. *Id.* This amount is inclusive of fees and reimbursement of out-of-pocket costs and is far less than counsel's current lodestar of more than $537,000 and over $13,000 in costs. It is also critical to note that after any deductions for fees, settlement administration, and service payments, that the Plaintiffs will receive an average settlement of over $6,000, an amount Plaintiffs' Counsel believes to be near or above 100% of their potential recovery

allowable under the claims certified in the Court's August 20, 2025, Order. In other words, unlike many cases of this type, this is not a case where there is a settlement pool from which a percentage contingency fee is deducted. Instead, the attorneys' fees do not reduce the amount of recovery to the Plaintiffs and are based upon a heavily reduced percentage of Plaintiff's counsel's hourly rate and time expended.

## III. ARGUMENT & AUTHORITIES

### A. *The Agreement Meets the Requirements for Approval of an FLSA Settlement*

In the Eastern District of Virginia, settlements in satisfaction of claims brought as collective actions under the FLSA and VOWA[1] typically require court approval. *LaFleur v. Dollar Tree Stores, Inc.*, 189 F. Supp. 3d 588, 593 (E.D. Va. 2016) (citation omitted); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982) ("When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness."). Under the approach taken by courts that follow *Lynn's Food Stores*, an FLSA/VOWA settlement should be approved if "the stipulated judgment proposed by the parties reflects 'resolution of a bona fide dispute,' and is 'a reasonable compromise over [the] issues.'" *Kuntze v. Josh Enterprises, Inc.*, Case No. 1:28cv38, 2019 WL 2179220, at *1 (E.D. Va. May 20, 2019) (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1354-55).

Thus, the first step in any settlement approval is determining whether there is a bona fide dispute over liability and damages under the FLSA/VOWA. *See id.* at *1 (citing *Saman v. LBDP,*

---

[1] VOWA incorporates the collective action procedures of the FLSA. Va Code Ann. § 40.1-29(J).

*Inc.,* No. CIV.A. DKC 12-1083, 2013 WL 2949047, at *3 (D. Md. 2013)). Next, the Court must determine whether the Settlement Agreement is a fair and reasonable resolution to that dispute. *See id.* Although the Fourth Circuit has not specifically delineated a standard for determining whether an FLSA/VOWA settlement is a "fair and reasonable resolution," district courts in the Fourth Circuit usually consider six factors:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel representing the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

*See id.* (citing *Saman*, 2013 WL 2949047, at *3 (quoting *Lomascolo v. Parsons Brinkerhoff, Inc.*, No. 1:08-cv-1310, 2009 WL 3094955, at *5 (Sep. 28, 2009))). "Finally, where a proposed settlement of FLSA claims includes a provision regarding attorney's fees, the reasonableness of the award must also 'be independently assessed[.]'" *Id.* (citing *Saman*, 2013 WL 2949047, at *3).

Here, the Settlement Agreement represents a good faith compromise of the Parties' *bona fide* dispute over liability and damages under the FLSA and VOWA. Furthermore, the Agreement is fair and reasonable.

**B. *Existence of a Bona Fide Dispute***

To merit Court approval, the Settlement Agreement must resolve a bona fide dispute over FLSA/VOWA provisions. "To determine whether there is an actual dispute about the Defendant's liability under the FLSA, the Court may examine the pleadings as well as the representations made in the Settlement Agreement." *Kuntze*, 2019 WL 2179220, at *2 (citing *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 408 (D. Md. 2014)).

Here, Plaintiffs alleged in the Complaint and Amended Complaint that Defendants violated state and federal wage & hour law by failing to properly pay them overtime, minimum, and regular wages. The litigation lasted several years and included robust briefing and argument of Defendants' Motion to Dismiss/Strike and Plaintiffs' Motion to Certify. Defendants deny all of Plaintiffs' allegations, claim that they properly paid their servers, and claim that no collective or class could be properly certified. Therefore, a bona fide dispute exists between the Parties.

**C. *The Settlement is Fair and Reasonable***

"Litigants should be encouraged to determine their respective rights between themselves and there is an overriding public interest in favor of settlement, particularly in class action suits." *Lomascolo*, 2009 WL 3094955, at *10 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). When considering the factors relevant to determining whether a settlement is fair, adequate, and reasonable, courts should apply a "strong presumption in favor of finding a settlement fair." *Id.* (internal quotations and citations omitted).

1. <u>The Extent of Discovery</u>.

Through substantial formal discovery and targeted voluntarily settlement exchanges, the Parties possess sufficient information to allow them to understand the case, the range of damages, and to assess the potential varying outcomes of the case. Specifically, Defendants responded to discovery and produced payroll information and information regarding its policies and wage and payroll and scheduling data for the Plaintiffs. Additionally, multiple members of Defendants' executive suite were deposed, and voluminous written discovery was taken of the Plaintiffs. Plaintiffs' counsel is satisfied with the amount of data made available by Defendants, with their review of this data, and with their understanding of the potential damages available in this litigation based on this data. Discovery in this case has been sufficient. The Parties know the important facts

affecting the case and have adequately assessed the respective benefits of the settlement and potential risks of continued litigation.

2. The Stage of the Proceedings.

Settlement discussions occurred throughout the litigation, picking up momentum again after the Court issued its ruling pairing down the class/collective action claims. The Defendants demonstrated good faith participation in the settlement negotiations by making information on its policies and wage and payroll data available to Plaintiffs for inspection and for inclusion into Plaintiffs' settlement damages model. If litigation had progressed it would have been complex, expensive, and protracted. The Parties would likely have had disputes through class discovery and may have eventually challenged each other in briefing on decertification, liability, and damages, not to mention cross-appeal of the Court's prior rulings. Additionally, the Defendants had substantive arguments that, under applicable law, that Plaintiffs claims should be limited to back wages, with no award of liquidated damages.

By the time the Parties reached their agreed resolution, they had sufficient opportunity to evaluate their claims and defenses and engage in an arms-length settlement negotiation. They recognized trial would be a difficult, unpredictable, and costly undertaking. Plaintiffs' counsel believes that the Settlement provides significant monetary relief to the Plaintiffs now, rather than risking an uncertain and unpromised resolution of contested issues. Settlement further provides the Defendants with peace of mind and certainty as to the exposure resulting from the asserted allegations. This supports the Court's approval of this settlement. *See Lomascolo*, 2009 WL 3094955, at *11; *Hargrove v. Ryla Teleservices, Inc.*, No. 2:11cv344, 2013 WL 1897027 at *3 (E.D. Va. Apr. 12, 2013).

3. Absence of Fraud or Collusion.

In the absence of evidence to the contrary, courts presume that no fraud or collusion occurred between counsel. *Lomascolo*, 2009 WL 3094955, at *12; *Baust v. City of Virginia Beach*, 574 F. Supp. 3d 358, at 366 (E.D. Va. 2021). In this case, the Parties reached settlement after lengthy negotiations and analysis of evidence. The proposed Settlement Agreement was not the product of undue influence, duress, overreaching, collusion, or intimidation. Indeed, it came only after two mediations and countless direct discussions amongst counsel. Counsel for both Parties zealously represented their clients' interests and actively sought the best resolution given the claims, defenses, and complexities of the case. Ultimately, each Plaintiff will be able to participate in the Settlement Agreement. Thus, there is no evidence to suggest fraud or collusion between counsel.

4. Experience of Counsel.

When counsel has "experience in federal court and employment litigation . . . their opinion is entitled to weight." *Gagliastre v. Captain George's Seafood Rest., LP*, No. 2:17cv379, 2019 WL 2288441, at *3 (E.D. Va. May 29, 2019). Counsel for both Plaintiffs and Defendants are competent litigators with significant experience in Federal Court regarding employment law, wage and hour disputes, and multiple party claims. Both Plaintiffs' and Defendants' counsel are highly experienced in these actions and have served as lead counsel in complex individual and collective action settlements that have been approved in this and other U.S. District Courts. Additionally, counsel have litigated against each other in several matters.

5. Probability of Plaintiffs' Success on the Merits

With regard to the probability of success on the merits, when evidence presented indicates that a Plaintiff has "significant hurdles to overcome to affect any recovery under the

FLSA[/VOWA]," this factor weighs heavily in favor of finding the settlement fair." *Patel v. Barot*, 15 F. Supp. 3d 648, 656 (E.D. Va. Apr. 23, 2014). As stated above, recovery in this matter is not guaranteed.

Plaintiffs claim that they were not properly paid overtime for certain work that qualified for overtime premiums and minimum wage protections. In short, Plaintiffs contend that at Defendants' restaurant locations that portions of servers' working hours went uncompensated and/or undercompensated.

In response, Defendants have asserted that no such non-payment or underpayment occurred and that if there were any violations, they were the isolated product of a few outlying bad actor managers and not the product of any issue infecting multiple restaurant locations. Plaintiffs would have faced additional dispute over whether liquidated damages should be awarded. This factor weighs in favor of approval of the Settlement Agreement

6. <u>The Amount of the Settlement In Relation to the Potential Recovery</u>

The Settlement Agreement will compensate Plaintiffs with an amount Plaintiffs' counsel believes to be roughly equivalent to Plaintiffs' best day given the confines of the limited minimum wage and overtime claims certified by the Court. The Parties believe that resolution now is warranted by the juxtaposition of the costs of protracted litigation against the possible damages available at issue. Therefore, the amount of the settlement in relation to the potential recovery strongly weighs in favor of approval.

## IV. PLAINTIFFS' COUNSEL'S ATTORNEY'S FEES & COSTS AND PAYMENT SERVICE AWARDS

While under both the FLSA and the VOWA, an award of attorneys' fees and costs are mandatory, the reasonableness and total amount of the award is within the discretion of the Court. 29 U.S.C. § 216 (b) ("The court . . . shall, in addition to any judgment awarded to the plaintiff or

plaintiffs, allow reasonable attorney's fee to be paid by the defendant, and costs of the action."); *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984) ("The amount of the attorney's fees, however, is within the sound discretion of the trial court." The FLSA "requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interests taints the amount the wronged employee recovers under a settlement agreement." *Poulin v. Gen. Dynamics Shared Res., Inc.*, No. 3:09-CV-00058, 2010 WL 1813497 (W.D. Va. May 5, 2010) (quoting *Silva v. Miller*, 307 F. App'x 349 (11th Cir. 2009)); *see also* Davis v. BT Americas Inc., 2017 WL 11506967, at *2 (E.D. Va., 2017). When assessing the fairness of attorneys' fees pursuant to a court-ordered fee award, courts generally rely on the lodestar analysis.[2] *See Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988 (4th Cir. 1992); However, assessing the fairness of attorneys' fees that are part of a negotiated FLSA settlement is not identical to the traditional lodestar analysis. *Devine v. City of Hampton*, No. 4:14cv81, 2015 WL 10793424, at *3 (E.D. Va. Dec. 1, 2015). In determining the reasonableness of attorneys' fees in an FLSA settlement, courts should assess the reasonableness of the counsel's legal fees to assure adequate compensation and in doing so, the court should review the proposed attorney's fees using the principles of the traditional lodestar method as guidance. *See Poulin*, 2010 WL 1813497, at *1.

Here, the Parties negotiated that Plaintiffs' counsel's attorneys' fees and costs would be set at $230,000.00, an amount far less than the total lodestar calculation of Plaintiffs' counsel's fees, which are in excess of $537,000.00 The $537,000.00 was incurred by investigating the

---

[2] In *Hensley v. Eckerhart,* 461 U.S. 424 (1983), the Supreme Court noted that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," the calculation is known as the "lodestar fee." *Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988 (4th Cir. 1992); *see also Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998) (citing that "[i]n calculating an award of attorneys' fees, a court usually should "determine[ ] a 'lodestar' figure by multiplying the number of reasonable hours expended times a reasonable rate.").

claims, meeting with the numerous plaintiffs, drafting pleadings, reviewing damages and documentation, researching FLSA statutory and case law, prosecuting the claims, drafting settlement memoranda and negotiating and settling claims, drafting settlement pleadings, meeting with and speaking with a myriad of clients individually and collectively, strategizing the development and resolution of the case, and conducting remaining legal work to bring the case to a conclusion, which will include advocating before the Court, administering the settlement, and speaking and meeting individually with Plaintiffs regarding settlement of the case. In order to facilitate settlement and maximize the benefit given to the Plaintiffs, Plaintiffs' counsel agreed to reduce its fee to $230,000. Lastly, Plaintiffs' requested fee is further warranted in light of the results obtained for the Plaintiffs. "In the Fourth Circuit, 'the most critical factor in calculating a reasonable fee award is the degree of success obtained…'" *Teague v. Bakker*, 213 F. Supp. 2d 571, 583 (W.D. N.C. 2002) (quoting *McKnight v. Cir. City Stores, Inc.*, 14 F. App'x 147, 149 (4th Cir. 2001)). As explained above, Plaintiffs' counsel believes the relief that the Plaintiffs will receive is outstanding. Especially inasmuch as Defendants would have vigorously disputed liability and the appropriateness of any liquidated damages. In light of the fact that the Plaintiffs will receive substantial relief here, the sought attorneys' fees award is extremely reasonable and should be approved.

The service awards of $5,000 to be paid to each of Lead Plaintiffs Adrian Dail, Brittany Turner, and Melissa Powers total $15,000, a modest 2.6% of the Settlement fund.[3] Plaintiffs' counsel believes that these service awards are well-deserved. The Lead Plaintiffs were instrumental in the initiation of this suit, as well as throughout its successful prosecution. In addition to responding to discovery and attending mediations, the Lead Plaintiffs spent numerous

[3] By contrast, the three Lead Plaintiffs make up 5.4% of the total 56 Plaintiffs.

hours meeting with counsel, discussing both the facts and circumstances of the claims, and engaging in litigation strategies as well. Further, without their efforts, it is likely that far fewer individuals would have joined this litigation as Plaintiffs and benefitted from the instant settlement. In short, all of the Plaintiffs benefited from the actions of the Lead Plaintiffs.

For the reasons set forth above, the Parties respectfully request that the Court enter an Order: (1) approving the Settlement Agreement (Exhibit 1) and (2) dismissing this case, with prejudice.

Respectfully Submitted,

| | |
|---|---|
| By: */s/ Craig Curwood*<br>Harris D. Butler, III (VSB No. 26483)<br>Craig Juraj Curwood (VSB No. 43975)<br>Zev H. Antell (VSB No. 74634)<br>Samantha Galina (VSB No. 96981)<br>BUTLER CURWOOD, PLC<br>140 Virginia Street, Suite 302<br>Richmond, Virginia 23219<br>Telephone: (804) 648-4848<br>Facsimile: (804) 237-0413<br>Email: harris@butlercurwood.com<br>craig@butlercurwood.com<br>zev@butlercurwood.com<br>samantha@butlercurwood.com<br><br>*Counsel for Plaintiffs* | */s/ Paul DeCamp*<br>Paul DeCamp (VSB No. 78204)<br>EPSTEIN BECKER & GREEN, P.C.<br>1227 25th Street, NW<br>Suite 700<br>Washington, DC 20037<br>Telephone: (202) 861-1819<br>Facsimile: (202) 861-3571<br>Email: pdecamp@ebglaw.com<br><br>Kathleen A. Barrett (*pro hac vice)*<br>EPSTEIN BECKER & GREEN, P.C.<br>227 West Monroe Street, Suite 4500<br>Chicago, IL 60606<br>Telephone: (312) 499-1400<br>Facsimile: (312) 845-1998<br>Email: kbarrett@ebglaw.com<br><br>*Counsel for BOTH, INC., et al.* |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on 12th day of February 2026, I electronically filed the foregoing Joint Motion to Stay Pending Settlement with the Clerk of Court using the CM/ECF system, which will automatically send email notification to all attorneys of record.

*<u>/s/ Craig Juraj Curwood</u>*
Craig Juraj Curwood (VSB No. 43975)