**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

ADRIAN DAIL, *et al.*,

Plaintiffs,

v.

BOTH, INC., *et al.*,

Defendants.

Case No. 2:23-cv-276

# OPINION & ORDER

Before the Court is the parties' joint motion for final approval of settlement. ECF Nos. 88 (motion), 89 (memorandum). For the reasons stated herein, the motion will be **GRANTED**.

## I. BACKGROUND[1]

This is a collective action for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*[2] ECF No. 50 ¶¶ 1–2, 4–5, 108–109, 129–40. The plaintiffs are 56 current and former tipped

[1] The facts outlined here are taken from the second amended complaint. ECF No. 50. However, the Court's recitation of the allegations should not be construed as admissions by the defendants.

[2] The plaintiffs also bring class actions for unpaid wages under Virginia state law (Counts III–V). *Id.* ¶¶ 6–8. Although FLSA settlements are subject to district court approval, settlements of the Virginia state law claims relevant to this case are not. Therefore, the Court's settlement approval analysis is limited to the plaintiffs' FLSA claims.

servers at Golden Corral restaurants located in Virginia. *Id.* ¶¶ 10–26, 53; ECF No. 89 at 2 (providing that there are currently 56 plaintiffs). The plaintiffs brought this action, on behalf of themselves and others similarly situated, against several Golden Corral franchises and their owner, BOTH, Inc. (collectively "Golden Corral"), a corporation registered in Virginia Beach. ECF No. 50 ¶¶ 10, 27–45.

The plaintiffs allege that Golden Corral required servers to perform off-the-clock work for significant portions of their work weeks, resulting in unpaid regular and overtime wages. ECF No. 50 ¶¶ 54–57, 65. Managers referred to these off-the-clock periods as "running breaks." *Id.* ¶ 59. Additionally, the plaintiffs were paid a sub-minimum tipped rate wage for hours ineligible for the tip credit rate, and were assigned phantom tips in order to create the appearance that they were paid a proper minimum wage. *Id.* ¶¶ 73–77, 80–84, 95–97. If servers chose not to cooperate with these policies and practices, they faced discipline or termination. *Id.* ¶¶ 64, 86.

As a result, the plaintiffs filed this action on June 16, 2023. ECF No. 1. The plaintiffs requested unpaid compensation and liquidated damages in equal amounts, attorney fees, pre- and post-judgment interest, and service awards. ECF No. 50 ¶ 230(f), (l)–(n). In August 2025, this Court conditionally certified the FLSA collective. ECF No. 81.

On December 1, 2025, the parties informed the Court that they reached a settlement agreement. ECF No. 86. Thereafter, the parties submitted a joint motion for settlement approval. ECF Nos. 88 (motion), 89 (memorandum). Under the settlement, Golden Corral has agreed to pay a gross sum of $575,000, including

$5,000 service awards to lead plaintiffs Adrian Dail, Brittany Turner, and Melissa Powers; attorney fees of $230,000; and a proportionate share of the remaining settlement balance to each plaintiff, representing back wages and damages in equal amounts. ECF No. 89-1 at 4–6.

## II. LEGAL STANDARDS

### A. FLSA Settlement Approval

When parties seek to settle FLSA claims for unpaid wages, the district court must review the proposed settlement and determine if it is a "fair and reasonable resolution of a bona fide dispute." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); *Gholston v. Smithfield Foods, Inc.*, No. 2:21-cv-194, 2022 WL 21842305, at *2 (E.D. Va. Nov. 2, 2022); *Minsterman v. S.L. Nusbaum Realty Co.*, No. 2:10-cv-303, 2011 WL 9687817, at *1 (E.D. Va. Jan. 21, 2011). "In deciding whether a bona fide dispute exists as to a defendant's liability under the FLSA, courts examine the pleadings in the case." *Duprey v. Scotts Co.*, 30 F. Supp. 3d 404, 408 (D. Md. 2014) (citing *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08-cv-1310, 2009 WL 3094955, at *16–17 (E.D. Va. Sept. 28, 2009)) (emphasis removed).

"There is a strong presumption in favor of finding a settlement fair." *Lomascolo*, 2009 WL 3094955, at *10 (quotation marks and citation omitted). When determining whether a FLSA settlement is fair and reasonable, district courts generally consider: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of

counsel who have represented the plaintiff; (5) the probability of the plaintiff's success on the merits; and (6) the amount of the settlement in relation to the potential recovery. *LaFleur v. Dollar Tree Stores, Inc.*, 189 F. Supp. 3d 588, 593 (E.D. Va. 2016) (citing *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173–74 (4th Cir. 1975); *Patel v. Barot*, 15 F. Supp. 3d 648, 656 (E.D. Va. 2014).

### B. Attorney Fees

Under the FLSA, a district court may award the plaintiff "a reasonable attorney[] fee." 29 U.S.C. § 216(b). "[T]he fee applicant bears the burden of . . . documenting the appropriate hours expended and hourly rates. The applicant . . . should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

The Fourth Circuit has outlined a three-step approach for courts to take when determining the appropriate award for attorney fees. *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). First, the court should "determine the lodestar figure by multiplying the number of reasonable hours" by "a reasonable" hourly fee. *Id.* (citing *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)). To determine whether any portion of a fee is reasonable, the following twelve factors should be considered:

> (1) the time and labor expended;
>
> (2) the novelty and difficulty of the questions raised;
>
> (3) the skill required to properly perform the legal services rendered;

(4) the attorney's opportunity costs in pressing the instant litigation;

(5) the customary fee for like work;

(6) the attorney's expectations at the outset of the litigation;

(7) the time limitations imposed by the client or circumstances;

(8) the amount in controversy and the results obtained;

(9) the experience, reputation and ability of the attorney;

(10) the undesirability of the case within the legal community in which the suit arose;

(11) the nature and length of the professional relationship between attorney and client; and

(12) attorney fees awards in similar cases.

*In re Abrams & Abrams, P.A.*, 605 F.3d 238, 244 (4th Cir. 2010) ("Johnson factors").

Second, the court "must subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *McAfee*, 738 F.3d at 88 (citing *Robinson*, 560 F.3d at 244) (quotation marks omitted).

And third, the "court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *McAfee*, 738 F.3d at 88 (quotation marks and citation omitted). When "a plaintiff has achieved only partial or limited success," the lodestar "may be an excessive amount," even "where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Hensley*, 461 U.S. at 436. The district court can "attempt to identify specific hours that should

be eliminated, or it may simply reduce the [plaintiff's] award to account for the limited success." *Id.* at 436–37. The court has "discretion in making this equitable judgment." *Id.* at 437.

## III. ANALYSIS

### A. Bona Fide Dispute

The Court must first determine if the settlement resolves a bona fide dispute over an alleged violation of FLSA provisions. *Minsterman*, 2011 WL 9687817, at *1 (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1355). Such a dispute exists when an employee claims they are entitled to unpaid wages under the FLSA.

In this case, the parties disputed whether the plaintiffs were entitled to unpaid minimum and overtime wages under the FLSA. ECF No. 50 ¶¶ 129–40 (alleging that the defendants violated the FLSA by failing to pay the plaintiffs minimum and overtime wages); ECF No. 55 (denying all allegations of wrongful or unlawful conduct and disclaiming any liability to the plaintiffs). Title 29, United States Code, Section 216 governs the penalties for violating the FLSA, including the payment of unpaid wages and liquidated damages in equal amounts. 29 U.S.C. § 216(b). The parties' settlement agreement provides payment to the plaintiffs for back wages and liquidated damages in equal amounts. ECF No. 89-1 at 6. Therefore, this settlement resolves a bona fide dispute over FLSA provisions.

### B. Reasonableness and Fairness

#### *i. The extent of discovery*

To determine whether the settlement agreement constitutes a reasonable and fair resolution of the dispute, the Court first considers whether the parties had adequate time to conduct sufficient discovery. Prior to negotiating a settlement, the parties engaged in "substantial formal discovery," and the discovery period had concluded. ECF No. 89 at 6; ECF No. 18 ¶ 4 (Scheduling Order providing for a Phase I discovery deadline of January 16, 2024). The plaintiffs had ample time to review all the information they obtained in discovery. Crediting the parties' representation that discovery provided them an adequate opportunity to "fairly evaluate the liability and financial aspects of [the] case," *Lomascolo*, 2009 WL 3094955, at *11 (citation and quotations marks omitted), the Court finds that the parties had adequate time to conduct sufficient discovery, and this factor weighs in favor of approving the settlement. *Id.* (representing that discovery provided the parties with sufficient information to "understand the case, the range of damages, and . . . the potential varying outcomes").

#### *ii. The stage of proceedings*

Next, the Court looks to the stage of the proceedings, including the complexity, expense, and likely duration of the litigation. The objective of this factor is to ensure that "proceedings advanced to a stage sufficient to permit the [p]arties and their counsel to obtain and review evidence, to evaluate their claims and defenses[,] and to engage in informed arms-length settlement negotiations with the understanding that

it would be a difficult and costly undertaking to proceed to [] trial." *Lomascolo*, 2009 WL 3094955, at *11. That objective is met here.

When the parties reached a settlement agreement, this case had been pending for approximately two-and-a-half years. During that time, the parties fully briefed numerous motions—among them, a motion to certify a class (ECF No. 42), motion to amend the complaint (ECF No. 45), and motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 53). The parties also engaged in settlement discussions throughout that period. ECF No. 89 at 7. The plaintiffs represent that the defendants acted in good faith to support settlement negotiations by "making information on its policies and wage and payroll data available to [the] [p]laintiffs for inspection and for inclusion into [the] [p]laintiffs' settlement damages model." *Id.* Altogether, this provided the parties a "sufficient opportunity to evaluate their claims and defenses and engage in an arms-length settlement negotiation." *Id.*

Additionally, without settlement, the parties faced proceeding with "complex, expensive, and protracted" litigation, including "disputes through class discovery" and challenges "in briefing on decertification, liability, and damages, not to mention cross-appeal of the Court's prior rulings." ECF No. 89 at 7. The parties appreciated that "trial would be a difficult, unpredictable, and costly undertaking" with risks to both sides—including the risk of "an uncertain and unpromised resolution of contested issues." *Id.*

Given the complex nature of the litigation and the parties' ability to obtain and review the relevant evidence over the course of more than two years, the Court finds that the stage of proceedings weighs in favor of settlement approval.

### *iii. Absence of fraud or collusion*

Third, the Court considers the absence of fraud or collusion in the settlement. The parties represent that the settlement agreement "[i]s not the product of undue influence, duress, overreaching, collusion, or intimidation," but rather was reached "after lengthy negotiations" which included "two mediations and countless direct discussions amongst counsel." ECF No. 89 at 8. The parties represent that counsel analyzed the evidence in this case and "zealously represented their clients' interests and actively sought the best resolution" such that each plaintiff was able to participate in reaching an agreement. *Id.*

Looking beyond the parties' own representations, there is no evidence in the record that the settlement agreement is the product of fraud or collusion. *Lomascolo*, 2009 WL 3094955, at *12 ("There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary.") (citation omitted). It is clear that both parties defended this action vigorously. Therefore, the Court finds that the absence of fraud or collusion further weighs in favor of settlement approval.

### *iv. Experience of plaintiffs' counsel*

Fourth, the Court reviews the experience of plaintiffs' counsel. Attorneys Harris D. Butler, III, Craig Juraj Curwood, Zev H. Antell, and Samantha Galina serve as plaintiffs' counsel in the instant matter. Attorney Curwood, who appears to

serve as lead counsel on this case, has been practicing law in the Commonwealth of Virginia since 1999 and served as the Chair of the Virginia Bar Association's Labor & Employment Law Section for the 2022 and 2023 terms. ECF No. 91-1 ¶¶ 4, 6. Attorneys Curwood, Butler, Antell, and Galina have "significant experience" representing clients in federal court matters involving employment law, including wage and hour disputes arising from violations of the FLSA. ECF No. 89 at 8; ECF No. 91-1 ¶ 10; ECF No. 91-2 ¶ 6. They "have served as [] counsel in complex individual and collective action settlements that have been approved in this and other U.S. [d]istrict [c]ourts." ECF No. 89 at 8. Additionally, plaintiffs' counsel have litigated against defense counsel in several matters. *Id.*

Upon review of their experience and credentials, the Court finds that plaintiffs' counsel possess the breadth of relevant experience and knowledge needed to litigate and resolve this matter in the best interests of the plaintiffs. Accordingly, this factor weighs in favor of approving the proposed settlement.

#### *v. The probability of the plaintiffs' success*

Fifth, the Court analyzes the probability of the plaintiff's success on the merits and whether the settlement agreement is adequate "in light of the strength" of the plaintiff's claims. *Flinn*, 528 F.2d at 1172. When the plaintiff's success appears uncertain or minimal, this factor weighs in favor of approving the proposed settlement. *See LaFleur*, 189 F. Supp. 3d at 595.

Here, the plaintiffs faced significant challenges to recovery. In all, the defendants lodged 24 defenses and affirmative defenses pertaining to the plaintiffs'

FLSA claims, all but two of which remained relevant following the Court's Opinion and Order granting in part the defendants' motion to dismiss. ECF No. 55 at 105–11; ECF No. 81 at 7–12 (dismissing Count One to the extent it pleads a violation of the FLSA based on the 80/20/30 Final Rule).

Proceeding to trial would have required the plaintiffs to overcome, among other obstacles, the defendants' contention that no non-payment or underpayment occurred, and even if there were violations, (1) "they were the isolated product of a few outlying bad actor managers and not the product of any issue infecting multiple restaurant locations," and (2) any such violations were not willful. ECF No. 89 at 7, 9. Recognizing that losing on any of these grounds may have resulted in no recovery at all, the plaintiffs opted to enter into a settlement that affords them "significant monetary relief . . . now." *Id.* at 7.

In light of the potential defenses and the risk to the plaintiffs' claims, the plaintiffs' success was uncertain. Consequently, this factor also weighs in favor of approving the proposed settlement.

***vi. The amount of the settlement in relation to potential recovery***

Finally, the Court considers the amount of the settlement in relation to the potential recovery. The FLSA allows recovery in the amount of unpaid minimum wages, overtime compensation, and/or lost wages, and an additional equal amount as liquidated damages. 29 U.S.C. § 216(b).

The settlement agreement provides that each eligible plaintiff will receive a proportionate share of the net settlement fund of $330,000,[3] representing equal parts back wages and liquidated damages. ECF No. 89-1 at 4–6. The plaintiffs represent that this amount is "roughly equ[al] to [the] [p]laintiffs' best day"—in other words, the settlement award is estimated to be proportionate to the best outcome the plaintiffs could have hoped to achieve had they chosen to proceed to trial. ECF No. 89 at 9. And the parties further represent that resolving the case via settlement at this stage is "warranted by the juxtaposition of the costs of protracted litigation against the possible damages available." *Id.* Based on these representations, the Court is satisfied that the settlement amount is reasonable in relation to the plaintiffs' potential recovery. Thus, the Court finds that this factor supports approval of the proposed settlement.

Because of the strong presumption in favor of finding a settlement fair, and because all six factors weigh in favor of approval, the Court approves the payment of $330,000[4] to the plaintiffs.

---

[3] The settlement agreement provides for a gross sum of $575,000, out of which plaintiffs' counsel is to receive $230,000 representing attorney fees, and the three lead plaintiffs are to each receive a $5,000 service award. ECF No. 89-1 at 4–6. The amount remaining after payment of attorney fees and service awards is $330,000.

[4] This amount represents only the settlement fund to be proportionately distributed amongst all eligible plaintiffs. It does not include the service awards, which are discussed separately.

Additionally, the Court approves as fair and reasonable the payment of a $5,000 service award to each of the three lead plaintiffs in this case "for their efforts in bringing and prosecuting this action and in consideration of the general release [of claims] set forth [in the agreement]." ECF No. 89-1 at 4. That amount is fair in light of the value the lead plaintiffs provided to the class; Plaintiff's counsel represents that the lead plaintiffs were "instrumental in the initiation of this suit, as well as throughout its successful prosecution," that, "[i]n addition to responding to discovery and attending mediations, [they] spent numerous hours meeting with counsel . . . and engaging in litigation strategies," and that "without their efforts, . . . far fewer individuals would have joined" the plaintiff class. ECF No. 89 at 11–12.

The service awards also fall within the range of awards that have been approved in this district. *See, e.g., Stone v. SRA Int'l, Inc.*, No. 2:14-cv-209, 2015 WL 12748271, at *4 (E.D. Va. Mar. 20, 2015) (approving $12,500 service award to named plaintiffs and concluding "that the policy underlying the FLSA would appear to be served by providing a modest incentive to plaintiffs who take such initiative") (quotation marks and citation omitted); *Henderson v. Verifications Inc.*, No. 3:11-cv-514, 2013 WL 12146748, at *4 (E.D. Va. Mar. 13, 2013) (approving a $5,000 service award to named plaintiff); *Pitt v. Kmart Corp.*, No. 3:11-cv-697, 2013 WL 12183659, at *3 (E.D. Va. May 24, 2013) (approving a $5,000 service award to the class representative). That the awards represent 2.6% of the total settlement fund—and

only 4.5% of the total fund after accounting for attorney fees—further indicates their reasonableness.

Accordingly, the Court approves the total settlement fund of $345,000 excluding attorney fees, which are addressed immediately below.

**C. Attorney Fees**

The proposed settlement provides for the payment of attorney fees in the amount of $230,000. ECF No. 89 at 10; ECF No. 89-1 at 5. Golden Corral does not object to counsels' request for attorney fees, nor do they challenge plaintiffs' counsels' claimed hourly rates or number of hours billed. *See* ECF No. 89 at 10. The parties' agreement is owed some deference; however, the Court must ensure that the negotiated sum is fair and reasonable. S*ee Gholston*, 2022 WL 21842305, at *2 ("[T]he FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under the settlement agreement.") (quotation marks and citations omitted). The Court applies the three-step approach outlined by the Fourth Circuit to determine whether the attorney fees that Golden Corral has agreed to pay to plaintiff's counsel are reasonable. *See McAfee*, 738 F.3d at 88. The Court is satisfied that they are.

***i. Lodestar Amount***

The Court must first determine the lodestar amount, which is the reasonable amount of hours multiplied by a reasonable attorney fee. *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998). When assessing the reasonableness of fees, the twelve

Johnson factors guide the Court's reasonableness assessment, though it "need not consider all twelve Johnson factors, only those relevant to the particular litigation." *Baust v. City of Virginia Beach*, 574 F. Supp. 3d 358, 364 (E.D. Va. Dec. 8, 2021) (citations omitted).

Here, a total of 1,103.2 hours were billed at varying rates, for a total sum of $544,388.50 in fees.[5] Counsel additionally incurred $13,134.18 in costs. In support of the reasonableness of the fee amounts and number of hours billed, the plaintiffs offer a declaration by lead counsel in this case, Attorney Curwood, as well as declarations by two disinterested counsel who practice employment law locally and are familiar with plaintiffs' counsel. ECF Nos. 91-1; 91-2 ¶¶ 2–6; 91-3 ¶¶ 2–4, 7.

*a. Reasonable Rate*

The Court first determines whether the hourly rates requested by plaintiffs' counsel are reasonable. "The reasonable rate is 'to be calculated according to the prevailing market rates in the relevant community.'" *LaFleur*, 189 F. Supp. 3d at 596 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). This "can be accomplished through affidavits from disinterested counsel, evidence of awards in similar cases, or other specific evidence that allows the court to determine 'actual rates which counsel can command in the market.'" *Project Vote/Voting for America, Inc. v. Long*, 887 F. Supp. 2d 704, 710 (E.D. Va. 2012) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1402

[5] Plaintiffs' counsel submitted detailed billing reports for *in camera* review. Accordingly, references to billing details lack citation to electronic filings.

(4th Cir. 1987)). "The relevant market for determining the prevailing rate is ordinarily the community in which the court where the action is prosecuted sits." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994).

Counsel's hourly rates were as follows: $625–$675 for Attorney Butler and $525–$575 for Attorney Curwood, founding members of the firm[6]; $495–525 for Attorney Antell, a partner; and $325–375 for Attorney Galina, an associate. ECF No. 91-2 ¶ 9; *see* ECF No. 89 at 12. The average hourly rate of counsel, without accounting for hours expended, is $515. Courts in this district have approved similar rates for counsel experienced in FLSA matters, and rates on the higher end of the spectrum relevant to this case for partners. *Gholston*, 2022 WL 21842305, at *6 (finding an hourly rate of $500 "reasonable . . . especially" when counsel was "experienced in FLSA" actions) (citing *LaFleur*, 189 F. Supp. 3d at 597–98 (approving reduced hourly rates that ranged from $75 to $475)); *Carr v. Rest Inn, Inc.*, No. 2:14-cv-609, 2015 WL 5177600, at *4 (E.D. Va. Sept. 3, 2015) (finding that $500 per hour was a "reasonable" rate for an experienced FLSA attorney); *Swimways Corp. v. Tofasco of Am., Inc.*, No. 2:08-cv-481, 2009 U.S. Dist. LEXIS 122865, at *16–17 (E.D. Va. Sept. 3, 2009) (finding $675 to be a reasonable hourly rate for a partner attorney).

---

[6] Although the declaration does not provide this information, the Court considers Attorneys Butler and Curwood to be founding members based on a review of the law firm website. For the same reason, the Court considers Attorney Antell to be a partner, and Attorney Galina to be an associate.

As noted *supra*, Part III.B.iv, the parties represent that plaintiffs' counsel are "highly experienced" in FLSA actions. ECF No. 89 at 8; ECF No. 91-1 ¶ 10; ECF No. 91-2 ¶ 6. Likewise, the declarations of experienced counsel that the parties submitted represent that plaintiffs' counsel "are currently and have long been regarded as among the Commonwealth's most effective and respected lawyers for employee representation," ECF No. 91-3 ¶ 7 (Martingayle declaration), and "have consistently been recognized by peers for their expertise in the area of wage [and] hour litigation," ECF No. 91-2 ¶ 6 (Coffield declaration). Accordingly, the experience and reputation of plaintiffs' counsel militates in favor of approval of their rates.

Further, district courts in the Fourth Circuit have approved higher rates in FLSA settlements "when all parties have agreed to them." *Donald Wilson v. Marlboro Plaza, LLC*, No. 8:22-cv-1465, 2026 WL 472059, at *4 (D. Md. Feb. 19, 2026) (approving an hourly rate of $750 based on agreement of the parties); *see also Guzman v. KP Stoneymill, Inc.*, No. 8:20-cv-2410, 2025 WL 756645, at *4 (D. Md. Mar. 11, 2025) (holding that higher rates are warranted when parties consent to such rates through settlement).

The customary fee likewise supports the reasonableness of counsels' hourly rates. *See in re Abrams & Abrams*, 605 F.3d at 248. Attorney Coffield represents that the rate structure is "reasonable and represents the prevailing market rate for similarly skilled attorneys engaged in similar work and cases" in this district. ECF No. 91-2 ¶¶ 9, 12 (providing that Coffield's rate "is regularly adjusted based on market rates" and is presently $545 per hour). Likewise, Attorney Martingayle

attests that counsels' rates "are at or below the prevailing market rates for similar matters and similarly qualified attorneys and staff in federal litigation in the Norfolk region." ECF No. 91-3 ¶ 9.

Therefore, based on the experience of counsel, the prevailing fees in the relevant market, and the agreement of the parties, the Court finds that counsel's hourly rates of between $325–$675 are reasonable.

Additionally, an individual who appears to be a paralegal or other administrative professional—based on the nature of the tasks performed[7]—charged $150 per hour. However, the plaintiff submitted no information to the Court regarding the professional designation and qualifications of this individual.[8] *Cf. Crump v. U.S. Dept. of Navy*, 245 F. Supp. 3d 692, 703 (E.D. Va. 2017) (finding as reasonable an hourly rate of $100 for a paralegal with five years of experience, $125 for a paralegal with fifteen years of experience, and $150 for an attorney with over thirty-five years of experience but acting as a paralegal); *Virginia-Pilot Media Cos., LLC v. Dep't of Just.*, No. 2:14-cv-577, 2016 WL 4265742, at *5 (E.D. Va. Aug. 10, 2016) (finding as reasonable an hourly rate of $155 for a paralegal with more than 20

---

[7] Such tasks include, for instance, proofreading; preparing civil cover sheets, summonses, waivers of service, and discovery; file organization; downloading files; calendaring deadlines; scheduling depositions; preparing and sending discovery questionnaire to plaintiffs and organizes responses; organizing opt-ins; and converting documents into PDF format.

[8] The sole information received is the declaration from Coffield which states that "paralegals [sic] 88.5 hours[] were reasonable and necessary." ECF No. 91-2 ¶ 16.

years of experience with the firm). The Court's calculation of the lodestar will not include the hours billed by this individual because the Court cannot appropriately conduct the required analysis of the reasonableness of the hourly rate.[9] *See Jackson v. Estelle Place, LLC*, No. 1:08-cv-984, 2009 WL 1321506, at *3 n.2 (E.D. Va. May 8, 2009) (declining to include the hours billed by three individuals for whom the plaintiffs failed to provide any information about their qualifications or experience); *United States ex rel. Engineered Servs. v. Hanover Ins. Co.*, No. 4:14-cv-21, 2015 WL 13308583, at *7 n.5 (E.D. Va. Mar. 11, 2015) (same).

*b. Reasonable Hours*

Counsel spent a total of 1,014.8 attorney hours[10] on this matter over the course of approximately two-and-a-half years, proceeding nearly one year beyond the Phase I discovery period. Despite the total number of hours worked, the parties agreed to reduced attorney fees of $230,000, an amount far less than the total lodestar

---

[9] The Court also notes that some of the billed work constitutes "purely clerical . . . tasks" which are "not [] compensa[ble] [] at all," because such tasks are "ordinarily a part of the law office's overhead." *Two Men & A Truck/Int'l, Inc. v. A Mover Inc.*, 128 F. Supp. 3d 919, 929 (E.D. Va. 2015). Because clerical hours are non-compensable, the hours billed for purely clerical work are necessarily unreasonable. Accordingly, even if plaintiffs' counsel had submitted information relevant to the professional designation and experience level of the relevant employee, the Court would have deducted all hours spent performing clerical tasks.

[10] The fees report provided by plaintiffs' counsel for *in camera* review reflects a total of 1,103.2 hours billed in this matter. However, as 88.4 hours were billed by the administrative professional previously mentioned, *supra* Part III.B.i.a., the Court deducts those hours to arrive at 1,014.8 hours billed by associate and partner attorneys.

calculation of plaintiffs' counsels' fees, which are in excess of $530,000. ECF No. 89 at 10.

Analyzing the time and labor expended, the billing report includes several block billed entries. Block billing occurs when an attorney groups several of the tasks completed that day into a single entry without identifying the time spent on each task. Despite the widespread use of block billing, it is "disfavored in attorney's fees award cases." *Denton v. PennyMac Loan Servs., LLC*, 252 F. Supp. 3d 504, 531 (E.D. Va. 2017) (citations omitted).

There is no "*per se* prohibition" on block billing. *Colonial River Wealth Advisors, LLC v. Cambridge Inv. Research, Inc.*, No. 3:22-cv-717, 2024 WL 69071, at *5 (E.D. Va. Jan. 5, 2024) (collecting cases). However, courts in this district have recognized that this practice can inhibit the fee award analysis. *Project Vote*, 887 F. Supp. 2d at 717 ("The court's role is not to . . . dissect every individual entry to hypothesize if the different tasks in the same entry could reasonably result in the requested time."); *Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006) ("Lumping and other types of inadequate documentation are thus a proper basis for reducing a fee award because they prevent an accurate determination of the reasonableness of the time expended in a case."); *Cho v. Joong Ang Daily News Wash., Inc.*, No. 1:18-cv-1062, 2020 WL 1056294, at *6 (E.D. Va. Mar. 4, 2020).

When "documentation of hours is inadequate," a district court may "reduce [an] award accordingly." *Hensley*, 461 U.S. at 433. This is particularly true where entries are block billed. Thus, a "fixed percentage reduction" is appropriate to the extent

these entries are unreasonable or vague. *Jones v. SouthPeak Interactive Corp. of Del.*, No. 3:12-cv-443, 2014 WL 2993443, at *9 (E.D. Va. July 2, 2014) (noting that this is the traditional method). The Court finds that some of the block billed entries are too vague to allow the Court to determine their reasonableness. Additionally, several billing entries of Attorney Curwood, whether block billed or not, are likewise too vague for the Court to assess their reasonableness. Examples include several entries that merely state "emails," "strategy," "document review," and/or "NEF."

Because the Court is unable to parse out the time spent for each task on block billed or otherwise vaguely-worded entries, the Court will reduce the total time billed by counsel by 2.5%. This figure takes into account the proportion of unreasonable block billed entries against reasonable entries and reflects the Court's view that the majority of the block billed entries appear reasonable, relevant, and compensable. As such, the Court imposes only a modest reduction. *Cf. Route Triple Seven Ltd. P'ship v. Total Hockey, Inc.*, 127 F. Supp. 3d 607, 622 (E.D. Va. 2015) (reducing a fee award by 15% when the "fee petition [was] replete with lumped entries and vague task descriptions"); *Project Vote*, 887 F. Supp. 2d at 716–17 (reducing a fee award by 10% when the "court [could] not find a single" entry that was not block billed).

Apart from the problematic entries discussed immediately above, counsels' hours are well documented with clear descriptions; they entail either individual, separate entries for each task, or block billed entries which designate the specific amount of time dedicated to each task. As previously noted, counsel are highly experienced and well regarded FLSA attorneys. Their work on this case included

meeting with numerous plaintiffs; fact gathering and analysis; legal research; drafting pleadings; researching and writing briefs; written discovery and document production; preparing for and taking depositions; attending and arguing motions hearings; interviewing witnesses; and settlement negotiations. ECF No. 89 at 10–11; ECF No. 91-1 ¶ 12. Accordingly, the work billed is directly related to litigation.

Although counsel does not address the novelty and difficulty of the issues in any detail, they generally represent that this case involved complex issues. ECF No. 89 at 7–8. That representation is borne out in the record. The parties' motions addressed weighty, complex questions, including whether the defendants paid the plaintiffs a minimum wage, whether alleging a violation of the DOL's 80-20-30 Final Rule and/or Dual Jobs Regulation suffices to make out a claim for violation of the FLSA, whether the defendants took an improper tip credit based upon allegedly inflating servers' tips, and whether the plaintiffs satisfied the standard for conditionally certifying an FLSA collective action. ECF No. 81 at 6–15; ECF No. 57 at 28–37. These "complex[]" questions would not resolve quickly if the parties chose to proceed to trial. *Lomascolo*, 2009 WL 3094955, at *10. Additionally, counsel achieved a substantial positive outcome for the plaintiffs, each of whom will receive approximately $6,090 as part of this settlement. ECF No. 89 at 2.

Upon due consideration of the record, agreement of the parties, and the relevant *Johnson* factors, the Court finds that a lodestar amount of $230,000 is reasonable. The Court also notes that the agreed-upon $230,000 in attorney fees represents a reduction in excess of 43% of the total amount of fees billed by counsel,

which exceeds the reduction the Court would impose and also lends to its reasonableness. Because the proposed settlement pertains to both the plaintiff's state law and FLSA claims—and, therefore, none of the plaintiff's claims were unsuccessful—the Court will not exclude hours for unsuccessful claims. *See Hensley*, 461 U.S. at 440.

Finally, the Court considers the plaintiff's degree of success, which is the "most critical factor" in the reasonableness analysis. *Doe v. Chao*, 435 F.3d 492, 505 (4th Cir. 2006) (quotation marks and citation omitted). There is no "precise . . . formula" for this analysis, *Hensley*, 461 U.S. at 436; rather, courts consider the "overall degree of success in light of the litigation as a whole." *Randolph v. PowerComm Constr., Inc.*, 780 F. App'x 16, 23 (4th Cir. 2019) (unpublished) (emphasis removed).

Counsel represents that "the relief that the [p]laintiffs will receive [as a result of the settlement] is outstanding . . . [e]specially inasmuch as [the] [d]efendants would have vigorously disputed liability and the appropriateness of any liquidated damages." ECF No. 89 at 11. Because the record does not indicate the damages sought, the Court is unable to measure the degree of the plaintiff's success by comparing the amount of damages sought to the amount obtained through the settlement. *See Mercer v. Duke Univ.*, 401 F.3d 199, 204 (4th Cir. 2005) (providing that the court must compare the amount of the damages sought to the amount awarded). However, as noted *supra* Part III.B.vi, counsel represents that the plaintiffs will receive through this settlement an amount roughly equivalent to the best they could have hoped for had they proceeded to trial, which the Court's credits

given its ruling on the defendants' motion to dismiss. ECF No. 89 at 9. Accordingly, no reduction for degree of success is appropriate in this case, and the Court will approve the payment of attorney fees in the amount of $230,000.

## IV. CONCLUSION

For the reasons stated herein, the joint motion for final approval of settlement (ECF No. 88) is **GRANTED**. The settlement fund in the gross amount of $575,000 is **APPROVED**. The Court further **APPROVES** plaintiffs' service award of $5,000 each (totaling $15,000) to Plaintiffs Adrian Dail, Brittany Turner, and Melissa Powers to be paid from the common fund. Counsel's request for $230,000 in attorney fees and costs, also to be paid from the common fund, is likewise **APPROVED**.

The case is hereby **CLOSED**, except that the Court **RETAINS** jurisdiction to enforce the settlement agreement.

**IT IS SO ORDERED.**

/s/ JKW

Jamar K. Walker
United States District Judge

Norfolk, Virginia
March 3, 2026